Brent R. Cole
Woelber & Cole, LLC
821 N Street, Suite 208
Anchorage, AK 99501
(907) 277-8001
brent@akcolelaw.com

Attorneys for Precision Cranes, Inc.

FILED in the Trial Courts
State of Alaska Fourth District
APR 2 3 2018
By _____ Deputy

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

### FOURTH JUDICIAL DISTRICT AT FAIRBANKS

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of PRECISION CRANES, INC., an Alaska corporation, <br><br> Plaintiff, <br><br> vs. <br><br> TESTER DRILLING SERVICES, INC., an Alaska corporation; TRAVELERS CASUALTY AND SURETY CO. OF AMERICA, a Connecticut corporation; and LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation (Bond #106721293) <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 4FA- 18 - 01787 CI |

## COMPLAINT

Plaintiff United States of America for the use and benefit of Precision Cranes, Inc., ("Precision") by and through counsel of record and for its Complaint against Tester Drilling Services, Inc. ("Tester"), Travelers Casualty and Surety Co. of America ("Travelers"), and Liberty Mutual Insurance Company ("Liberty"), alleges, states, and claims as follows:

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Exhibit A, p. 1 of 27
Case 4:18-cv-00019-TMB   Document 1-1   Filed 05/24/18   Page 1 of 27

# I. PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff United States of America is a party to this action pursuant to the requirements of 40 U.S.C. § 3133 (b)(3)(A).

2.      Plaintiff Precision Cranes, Inc., is an Alaska corporation with its principal place of business in North Pole, Alaska, in good standing, having paid all taxes and filed all reports which are prerequisite to its right to bring this action.

3.      On information and belief, Defendant Tester Drilling Services, Inc., is an Alaska corporation with its principal place of business in Anchorage, Alaska.

4.      On information and belief, Defendant Travelers Casualty and Surety Co. of America is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

5.      On information and belief, Defendant Liberty Mutual Insurance Company is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

6.      The court has jurisdiction over the subject matter hereof pursuant to Alaska Statute § 22.10.020 as the amount in controversy exceeds $100,000 and over the parties hereto pursuant to Alaska Statute § 09.05.015.

7.      Venue is appropriate in Fourth Judicial District, State of Alaska pursuant to Alaska Rule of Civil Procedure 3(c).

## II. STATEMENT OF FACTS

8.      Precision hereby re-alleges the allegations made in paragraphs 1-7 above and further states and alleges as follows.

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

9.     On information and belief, the United States of America ("Government") and Unit-ASRC Construction, LLC, ("Unit") entered into a contract (the "Prime Contract") for the construction of the Long-Range Discrimination Radar Construction Package No. 1, Mission Control Facility (the "Project") at Clear Air Force Base, Alaska.

10.     On or about May 2, 2017, Unit, as prime contractor, and Travelers and Liberty, as sureties, executed Payment Bond No. 106721293 guaranteeing full payment to persons or entities that supplied labor and/or materials in connection with the Project. The penal sum of the bond is $112,949,720. A true and accurate copy of the payment bond is attached as **EXHIBIT 1**.

11.     On or about July 7, 2017, Unit entered into a subcontract with Tester whereby Tester agreed to conduct drilling work under the Prime Contract.

12.     In order to perform its duties under the subcontract with Unit, Tester hired Precision. Tester entered into a subcontract (Subcontract No. TDSI-165302) with Precision whereby Precision agreed to provide crane services to support the installation of eight 36"X300' deep water wells. A true and correct copy of Tester's subcontract with Precision is attached as **EXHIBIT 2**.

13.     From July 28, 2017, through October 18, 2017, Precision provided equipment, labor, services, and materials pursuant to the Subcontract with Tester.

14.     Precision presented Tester on repeated occasions amounts owed under the Subcontract and Tester has not paid any amounts owed under the Subcontract.

15.     On or about December 1, 2017, Precision provided notice to Unit, Travelers, and Liberty for the unpaid amounts owed by Tester.

16.     Precision was contacted by the Travelers and later and provided support documentation to support its claim for unpaid services under the Subcontract.

17.     Travelers and Liberty denied without any legal authority Precision's claim stating that "[i]t appears that the labor and materials furnished by Precision did not advance construction of the project covered by the bond[.]" A true and correct copy of the denial letter from Travelers is attached as **EXHIBIT 3**.

18.     Precision incurred damages in an amount not less than $577,312.31 for equipment, materials, labor and services provided to Tester including the rental, mobilization, and demobilization of two cranes, crew, and service truck.

19.     Precision has made repeated demands for payment from Tester for the damages described in Paragraph eighteen (18) above. Tester has failed to adequately respond to Precision's demands.

### III. CAUSES OF ACTION

### COUNT I
### PAYMENT BOND CLAIM

20.     Precision re-alleges and fully incorporates the statements made in Paragraphs 1 through 16 and further states and alleges as follows:

21.     The project for which Precision provided labor and materials is a federal construction contract, which required Unit to furnish a payment bond pursuant to 40 U.S.C. § 3131 *et seq.* (the "Miller Act").

COMPLAINT
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*
Page 4 of 8

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

22. More than 90 days, but less than one year, has elapsed since Precision last performed work on the Project.

23. Precision presented Unit, Travelers, and Liberty with notice of its claim within the period of time required by 40 U.S.C. §§ 3133(b)(2).

24. Travelers and Liberty have denied Precision's claim against the bond.

25. Despite Precision's demands, neither Tester, Travelers, nor Liberty have paid the amounts owed Precision under its Subcontract.

26. In accordance with the terms of the payment bond and the Miller Act at 40 U.S.C. §§ 3131, *et. seq*, Travelers and Liberty are liable to Precision for the principal sum not less than $577,312.31 representing unpaid amounts Precision is owed by Tester. Precision is entitled to recovery against the bond.

## COUNT II
## BREACH OF EXPRESS CONTRACT

27. Precision re-alleges and fully incorporates the statements made in Paragraphs 1 through 21 above and further states and alleges as follows:

28. Precision and Tester entered into a subcontract under which Precision agreed to supply certain equipment, labor, materials and services for the Project and Tester agreed to pay Precision for that work.

29. Precision supplied the equipment, labor, materials, and services required by Precision's subcontract with Tester, which equipment, labor, materials, and services were accepted by Tester and incorporated into the Project, but Tester has failed to pay Precision in full for the equipment, labor, materials, and services performed.

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

30. Tester's failure and/or refusal to pay Precision in full, constitutes a breach of the parties' subcontract.

31. As a direct and proximate result of the breach, Precision has incurred damages plus interest more than $100,000 in an amount to be proven at trial.

**COUNT III**
**VIOLATION OF ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (AS 45.50.471 et seq.)**

32. Precision re-alleges and fully incorporates the statements made in Paragraphs 1-26 above and further states and alleges as follows:

33. By agreeing to execute a Payment Bond and act as sureties on the Project Travelers and Liberty are engaged in trade or commerce in Alaska.

34. Travelers and Liberty engaged in unfair or deceptive acts or practices by providing a surety bond and then denying payment to Precision when it demonstrated it had not been paid for equipment, labor, and materials provided to the Project because "it appears that the labor and materials furnished by Precision did not advance construction of the project covered by the bond[.]"

35. Precision relied on the representations of Travelers and Liberty in the Payment Bond that it would provide payment if payment for services was not received for work performed on the Project.

36. As a result, Precision has suffered damages in an amount more than $100,000 due to Travelers' and Liberty's unfair acts or deceptive practices.

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

37.     Precision is entitled to recover treble damages sustained and full attorney's fees expended as a result of the Alaska Unfair Trade Practices and Consumer Protection Act.

## IV. PRAYER FOR RELIEF

Wherefore, having fully alleged its claim herein, Precision respectfully prays for the following relief:

1.     For judgment against Tester and in favor of Precision;

2.     For an award of damages for Precision against Tester in excess of $100,000, the exact amounts to proven at trial;

3.     For actual reasonable attorneys' fees against Tester as allowed by the applicable rules and regulations, statutes, civil rules, and the parties' subcontract;

4.     For a judgment against Travelers and Liberty and in favor of Precision.

5.     For an award of damages against Travelers and Liberty as sureties on the bond in excess of $100,000 the exact amount to be proven at trial;

6.     For treble damages against Travelers and Liberty pursuant to Alaska Statute § 45.50.576 and full attorney's fees pursuant to Alaska Statute § 45.50.537 in an amount to be determined by the court;

7.     For pre- and post-judgment interest as allowed by the applicable statutes and civil rules;

8.     For costs as allowed by the applicable statutes and civil rules; and

9.     For all such other and further relief as the Court deems just and equitable.

COMPLAINT
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*
Page 7 of 8

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

DATED this 20ᵗʰ day of April, 2018, at Anchorage, Alaska.

WOELBER & COLE, LLC
Attorneys for Precision Cranes, Inc.

By: _____

Brent R. Cole
AK State Bar No.: 8606074

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

COMPLAINT
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*
Page 8 of 8

| PAYMENT BOND *(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)* 05/02/2017 | OMB Control Number: 9000-0045 Expiration Date: 7/31/2019 |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 60 minutes to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL *(Legal name and business address)* | TYPE OF ORGANIZATION *("X" one)* | | |
|---|---|---|---|
| UNIT - ASRC Construction, LLC 3900 C Street, Suite 301 Anchorage, AK 99503 | ☐ INDIVIDUAL ☐ PARTNERSHIP ☐ JOINT VENTURE ☐ CORPORATION ☒ OTHER *(Specify)* LLC | | |
| | STATE OF INCORPORATION Alaska | | |

| SURETY(IES) *(Name(s) and business address(es))* Travelers Casualty and Surety Company of America One Tower Square Hartford, CT 06183 | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | 112 | 949 | 720 | 00 |
| Liberty Mutual Insurance Company 175 Berkeley Street Boston, MA 02116 | CONTRACT DATE 04/28/2017 | CONTRACT NUMBER W911KB-17-C-0002 | | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| UNIT - ASRC Construction, LLC | | PRINCIPAL | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. *(signature)* (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. Brady Strahl Managing Member | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) | | |
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. | (Seal) |
| NAME(S) *(Typed)* | 1. | 2. | |

| | | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | Travelers Casualty and Surety Company of America, One Tower Square, Hartford, CT 06183 | STATE OF INCORPORATION Connecticut | LIABILITY LIMIT $56,474,860.00 | Corporate Seal |
| | SIGNATURE(S) | 1. *(signature)* | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. Christin M. Hubble Attorney-in-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

STANDARD FORM 25A (REV. 8/2016)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

**EXHIBIT 1**

| | NAME & ADDRESS | Liberty Mutual Insurance Company 175 Berkeley Street, Boston, MA 02116 | | STATE OF INCORPORATION Massachusetts | LIABILITY LIMIT $56,474,860.00 | Corporate Seal |
|---|---|---|---|---|---|---|
| **SURETY B** | SIGNATURE(S) | 1. *Christin M. Hubble* | | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Christin M. Hubble Attorney-In-Fact | | 2. | | |
| **SURETY C** | NAME & ADDRESS | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2 | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY D** | NAME & ADDRESS | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY E** | NAME & ADDRESS | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY F** | NAME & ADDRESS | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY G** | NAME & ADDRESS | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |

### INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block on the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

(b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

(c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25A (REV. 8/2016) BACK

**EXHIBIT 1**

# SUBCONTRACT
## TDSI- 165302

**THIS AGREEMENT,** Made this _____day of __July, 2017, by and between, Precision Crane hereinafter referred to as the Subcontractor, and Tester Drilling Services, Inc. hereinafter referred to as the contractor.

**WHEREAS,** the contractor has entered into a contract dated the 7th day of July, 2017, with Unit-ASRC Construction, LLC, hereinafter referred to as the Owner, for the Long Range Discrimination Radar (LDRD) Construction Package #1- Site Infrastructure, MCF and substation, hereinafter referred to as the project, at Clear AFS, Alaska.

**WHEREAS,** copies of the Prime Contract are on file in the office of the Contractor and are available to the Subcontractor.

### NOW THEREFOR, it is agreed as follows:
### WITNESSETH:

Section 1 : Contract Documents. The term :Prime Contract" as used herein refers to all the General and Special Conditions, Drawings, Specifications, Addenda, Amendments, Modifications and all other documents forming or by reference made a part of the contract between the Contractor and Owner. All of the aforesaid shall be considered a part of this Subcontract by reference thereto and the Subcontractor agrees to be bound to the contractor and Owner by the terms and provisions thereof, so far as they apply to the Work hereinafter described.

Section 2: The Work. The Subcontractor agrees to furnish all supervision, labor, tools, equipment, any special materials, tools and supplies necessary to perform, and to perform between July 27th to October 8th 2017 the following described work hereinafter referred to as the Work.
Provide crane services to support the installation of 8 each 36"X300' deep Water Wells. Work will proceed 7 days per week/24 hrs. per day with two cranes. Work includes operating crane to provide grab services while cleaning out 900 mm X 820 mm casings. Operate 2[nd] crane to provide support services to support casing and well installation.

**CLARIFICATION:Unit rates per Precision proposal of 1/24/17&7/18/17,not to exceed $675,000.00**
**TOTAL SUBCONTRACT AMOUNT:  NTE  $675,000.00**
Section 3: Payment.

(a) The Contractor agrees to pay the Subcontractor for the performance of this subcontract, as specified herein, the sum of $675,000.00 Dollars and 0 Cents (675,000.00), subject to additions and deductions for changes agreed upon or determined, as hereinafter provided. Partial payments will be made to Subcontractor each month in an amount equal to 100 percent of the value, computed on the basis of the prices set forth above, of the quantity, as

---

**EXHIBIT 2**

estimated by the Architect or Engineer, of the Work performed hereunder, less the aggregate of previous payments, and such partial payments shall be made to the Subcontractor within seven (7) days after the Contractor receives payment for such Work from the Owner. **No Retainage**

(b)     If at any time prior to final payment hereunder the Owner reduces the amount of retainage withheld from the Contractor, the Contractor may, in its sole discretion, with the consent of the Subcontractor's surety, reduce accordingly the retained percentage withheld from the Subcontractor. **No Retainage**

(c)     The Contractor may deduct from any amounts due or to become due to the Subcontractor any sum or sums owed by the Subcontractor to the Contractor; and, in the event of any breach by the Subcontractor of any provision or obligation of this Subcontract, or in the event of the assertion by other parties of any claim or lien against the Contractor or the premises arising out of the Subcontractor's performance of this Subcontract, the Contractor shall have the right to retain out of any payments due or to become due to the Subcontractor an amount sufficient to completely protect the Contractor from any and all loss, damage or expense therefrom, until the situation has been satisfactorily remedied or adjusted by the Subcontractor.

<u>Section 4</u>.    **Bonding**. No bond will be required.

<u>Section 5</u>.    **Changes.** The Contractor may at any time by written order of Contractor's authorized representative, and without notice to the Subcontractor's sureties, make changes in, additions to and omissions from the Work to be performed under this Subcontract, and the Subcontractor shall promptly proceed with the performance of this Subcontract as so changed. Any increase or decrease in the Subcontract price resulting from such changes shall be agreed upon in writing by the parties hereto. Any claim for adjustment of the Subcontract price under this Section must be made in writing within ten (10) days from the date such changes are ordered. The Subcontract price shall be equitably adjusted on account of any such changes, subject to any applicable provisions of the Prime Contract.

<u>Section 6</u>.    **Prosecution of Work.**

(a) The Subcontractor shall furnish all labor, supervision, tools, equipment, materials and supplies necessary for the performance of this Subcontract in a proper, efficient and workmanlike manner. The Subcontractor shall prosecute the Work undertaken in a prompt and diligent manner whenever such Work, or any part of it, becomes available, or at such other time or times as the Contractor may direct, and so as to promote the general progress of the entire construction, and shall not, by delay or otherwise, interfere with or hinder the work of the Contractor or any other subcontractor. Any materials that are to be furnished by the Subcontractor hereunder shall be furnished in sufficient time to enable the Subcontractor to perform and complete his Work within the time or times provided for herein. The Subcontractor agrees to reimburse the Contractor for any and all liquidated or actual damages that may be assessed against and collected from the Contractor which are attributable to or caused by the Subcontractor's failure to perform the Work required by this Subcontract within the time fixed or in the manner provided for herein and, in addition thereto, agrees to pay to the Contractor such other or additional damages as the Contractor may sustain by reason of such delay by the Subcontractor. The payment of such damages shall not release the Subcontractor from his obligation to otherwise fully perform this Subcontract. Upon written request by the Contractor, the Subcontractor shall furnish to the Contractor such evidence as the Contractor may require relating to the Subcontractor's ability to fully perform this Subcontract in the manner and within the time specified herein.

(b)     In the event the Subcontractor fails to comply or becomes disabled from complying with the provisions herein as to character or time of performance, and the failure is not corrected within five (5) days after written request by the Contractor to the Subcontractor, the Contractor, by subcontract or otherwise, may without prejudice to any

**EXHIBIT 2**

other right or remedy, take over and complete the performance of this Subcontract at the expense of the Subcontractor or, without taking over the work, may furnish the necessary materials and/or employ the workmen necessary to remedy the situation at the expense of the Subcontractor. If the Contractor takes over the Work pursuant to this paragraph, it is specifically agreed that the Contractor may take possession of the premises and of all materials, tools and equipment of the Subcontractor at the site for the purpose of completing the Work covered by this Subcontract.

        (c)    It is agreed that the Subcontractor shall be considered as disabled from so complying whenever a petition in Bankruptcy or for the appointment of a receiver is filed against him.

        (d)    The Subcontractor shall keep on the site during the progress of the Work a competent superintendent who shall be the authorized representative of the Subcontractor. Directions and communications to him from the Contractor in connection with the Work shall be treated as directions and communications to the Subcontractor.

Section 7.    Delays.

        (a)    In the event the Subcontractor's performance of this Subcontract is delayed or interfered with by acts of the Owner, Contractor or other subcontractors, he may request an extension of the time for the performance of same, as hereinafter provided, but shall not be entitled to any increase in the Subcontract price or to damages or additional compensation as a consequence of such delays or interference, except to the extent that the Prime Contract entitles the Contractor to compensation for such delays and then only to the extent of any amounts that the Contractor may, on behalf of the Subcontractor, recover from the Owner for such delays.

        (b)    No allowance for an extension of time, for any cause whatsoever, shall be claimed by or made to the Subcontractor unless the Subcontractor shall have made written request upon the Contractor for such extension within forty-eight (48) hours after the cause of such extension occurred or, if the Prime Contract provides for a shorter period, within sufficient time to permit the Contractor to give notice to the Owner within the time allowed by the Prime Contract for such notice.

        (c)    No allowance for an extension of time shall, in any event, be made to the Subcontractor for delay by the Subcontractor in preparing drawings or in securing approval of the Architect or Engineer thereto when such drawings are not properly prepared or when the Subcontractor by the exercise of reasonable diligence and judgment could have anticipated and avoided the delay.

Section 8.    Labor. The Subcontractor, in connection with all Work covered by this Subcontract, shall comply with and be bound by any labor agreements executed by the Contractor or on Contractor's behalf. Failure at any time to comply with any of the provisions of such agreements will, at the option of the Contractor, be cause for immediate termination of this Subcontract for default and the Contractor shall have all of the rights contained in Section 6 with regard to such termination. If, by reason of strikes, picketing or disputes of any nature between the Subcontractor and any individuals, group or organization, this Subcontractor should be persistently, repeatedly, or for a period of five (5) consecutive days, unable to supply enough properly skilled workers or proper materials to execute the work defined in this Subcontract, then the Contractor may terminate the Subcontract for default and proceed with accordance with Section 6 hereof.

Section 9.    Approvals. All drawings of the Subcontractor shall be submitted for approval of the Architect or Engineer through the Contractor and all other communications between the Subcontractor and the Architect, Engineer or Owner with respect to the Work shall be transmitted through the Contractor.

**EXHIBIT 2**

**Section 10.    Indemnification.**

(a)     Subcontractor's Performance.  To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless, the Contractor (including affiliates, parents and subsidiaries, their agents and employees) and other contractors and subcontractors and all of their agents and employees and when required by the Contractor by the Contract Documents, the Owner, the Architect, Architect's consultants, agents and employees from and against all claims, damages, loss and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontract provided that:

(1)     Any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease, or death or to injury to or destruction of tangible property (other than the Subcontractor's Work itself) including the loss of use resulting therefrom, to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor or for anyone for whose acts the Subcontractor or for anyone for whose acts the Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder.

(2)     Such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any part or person described in this Section 10.

(b)     Compliance with Laws.  The Subcontractor agrees to be bound by, and at its own cost, comply with all federal, state and local laws, ordinances and regulations (hereinafter collectively referred to as "laws") applicable to the Subcontractor's work including, but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, safety and all other laws with which the Contractor must comply according to the Contract Documents.

The Subcontractor shall be liable to the Contractor and the Owner for all loss, cost and expense attributable to any acts of commission or omission by the Subcontractor, its employees and agents resulting from the failure to comply therewith, including, but not limited to, any fines, penalties or corrective measures.

(c)     Patents.  Except as otherwise provided by the Contract Documents, the Subcontractor shall pay all royalties and license fees which may be due on the inclusion of any patented materials in the Subcontractor's work. The Subcontractor shall defend all suits for claims for infringement of any patent rights arising out of the Subcontractor's work, which may be brought against the Contractor or Owner, and shall be liable to the Contractor and Owner for all loss, including all costs, expenses, and attorney's fees.

**Section 11.    Insurance.**

(a)  Subcontractor's Insurance.  Prior to start of the Subcontractor's work, the Subcontractor shall procure for the Subcontractor's work and maintain in force Workers' Compensation Insurance, Employer's Liability Insurance, Comprehensive or Commercial General Liability Insurance on an occurrence basis, and all insurance required of the Contractor under the Contract Documents.

The Contractor and Owner shall be named as additional insureds on each of these policies except for Worker's Compensation.

This insurance shall include contractual liability insurance covering the Subcontractor's obligations under Section 10.

**EXHIBIT 2**

(b) Minimum Limits of Liability. The Subcontractor's Comprehensive or Commercial Liability Insurance and Comprehensive Automobile Liability Insurance, as required by Paragraph 11(a), shall be written with limits of liability not less than the following contract requirements.

**Workman's Compensation and Occupational Diseases:**
As required by State law

**Employer's Liability Coverage, including all occupational diseases when not so covered in Workman's Compensation above:**
$100,000 per accident

**General Liability Insurance (Comprehensive bodily injury and property damage):**
$2,000,000

**Automobile Liability (Comprehensive):**
$200,000 bodily injury per person; $500,000 bodily injury per occurrence; $20,000 per occurrence for property damage

**Professional Liability Insurance General Coverage (errors and omissions) in an amount no less than:**
$500,000

(d) Number of Policies. Comprehensive or Commercial General Liability Insurance and other liability insurance may be arranged under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an Excess or Umbrella Liability Policy.

(e) Cancellation, Renewal or Modification. The Subcontractor shall maintain in effect all insurance coverage required under this Subcontract at the Subcontractor's sole expense and with insurance companies acceptable to the Contractor.

All insurance policies shall contain a provision that the coverages afforded thereunder shall not be canceled or not renewed, nor restrictive modifications added, until at least thirty (30) days prior written notice has been given to the Contractor unless otherwise specifically required in the Contract Documents.

Certificates of Insurance, or certified copies of policies acceptable to the Contractor, shall be filed with the Contractor prior to the commencement of the Subcontractor's work.

In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Subcontract, the Contractor may purchase such coverage and charge the expense thereof to the Subcontractor, or terminate this Subcontract.

The Subcontractor shall continue to carry completed operations liability insurance for at least two years after final payment. The Subcontractor shall furnish the Contractor evidence of such insurance at final payment and one year thereafter.

**EXHIBIT 2**

Section 12. **Liens and Claims.** Subcontractor shall, as and when requested, furnish evidence satisfactory to the Contractor and Owner that claims for labor and material furnished the Subcontractor in the connection with performance of this Subcontract have been paid, including claims for union health, welfare and pension fund payments and for payroll taxes. Such evidence shall be furnished in such form and manner as requested by Contractor (Attachment B), and all statements relative thereto shall, if called for by Contractor, be made by sworn affidavit. Subcontractor shall furnish to Contractor releases of bond rights and lien rights by persons who have furnished labor, material or other things in performance of this Subcontract, it being agreed that payment of money otherwise due Subcontractor need not be made by Contractor until such releases are furnished. Subcontractor shall deliver his work free from all claims, encumbrances or liens.

Section 13. **Possession Prior to Completion.** Whenever it may be useful or necessary for the Contractor to do so, the Contractor shall be permitted to occupy and/or use any portion of the Work which has been either partially or fully completed by the Subcontractor before final inspection and acceptance thereof by the Owner, but such use and/or occupation shall not relieve the Subcontractor of his guarantee of said Work nor of his obligation to make good at his own expense any defect in materials and/or workmanship which may occur or develop prior to Contractor's release from responsibility to the Owner.

Section 14. **Other Contracts.** It is understood and agreed that the Work provided for in this Subcontract constitutes only a part of the work being performed for the Owner by the Contractor and other subcontractors. The Subcontractor, therefore, agrees to perform the Work called for in this Subcontract in such a manner that he will not injure, damage or delay any other work performed by the Contractor or any other subcontractor or supplier, and further agrees to pay or reimburse the Contractor for any additional costs, damage or delay that may be caused to such other work of the Contractor, subcontractors or suppliers, by the Subcontractor or by his agents or employees.

Section 15. **Independent Contractor.** The Subcontractor specifically agrees that he is, or prior to the start of the Work will become, an independent contractor.

Section 16. **Compliance with Law.** The Subcontractor agrees to fully comply with all Federal, State and local laws, ordinances and regulations.

Section 17. **Safety.** The Subcontractor shall take all reasonable safety precautions pertaining to his work and the conduct thereof. Without limiting the generality of the foregoing, he shall comply with all applicable laws, ordinances, rules, regulations and orders issued by a public authority, whether federal, state, local or otherwise, including, but not limited to, the Federal Occupational Safety and Health Act and, in addition, the safety measures called for by the Contract.

Section 18. **Protection of Work.** The Subcontractor specifically agrees that he is responsible for the protection of his Work until final completion and acceptance thereof by the Owner and that he will make good or replace, at no expense to the Contractor or the Owner, any damage to his Work which occurs prior to said final acceptance.

Section 19. **Disputes.**

(a) In case of any disputes between the Subcontractor and the Contractor, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to Owner both by the terms of the Prime Contract and by any and all decisions or determinations made thereunder by the party or board so authorized in the Prime Contract. It is agreed that in the event the Prime Contract contains a provision, hereinafter called "Disputes" clause, whereby claims may be resolved under an administrative procedure or by arbitration, then as to any claims of Subcontractor for or on

**EXHIBIT 2**

account of acts or omissions of the Owner or his Engineer which are not disposed of by agreement, the Contractor agrees to present to the Owner, in Contractor's name, all of Subcontractor's claims for additional monetary compensation or time extension; and to further invoke, on behalf of the Subcontractor, those provisions in the Prime Contract for determining disputes. Contractor shall have the option to present such claims upon Subcontractor's behalf, in advance of and even without Subcontractor's written request. Subcontractor shall have full responsibility for preparation and presentation of such claims and shall bear all expenses thereof, including attorney's fees. Subcontractor agrees to be bound by the procedure and final determinations as specified in any such Disputes clause, and agrees that it will not take, or will suspend, any other action or actions with respect to any such claims and will pursue no independent litigation with respect thereto, pending final determination under such Disputes clause. Subcontractor shall not be entitled to receive any greater amount from Contractor than contractor is entitled to and actually does receive from the Owner on account of Subcontractor's Work, less any markups or costs incurred by the Contractor and to which Contractor is otherwise entitled, and Subcontractor agrees that it will accept such amount, if any, received by Contractor from Owner as full satisfaction and discharge of all claims for or on account of acts of omission of the Owner or his Engineer.

        (b)    Subcontractor shall be bound by Contractor's determination, made in good faith, as to apportionment of any amounts received from Owner for claimants, including Contractor and other subcontractors, whose work is affected by any act or omission of the Owner or his Engineer.

        (c)    Should a dispute as to the proper interpretation of this Subcontract, or work or material performed or furnished hereunder, arise which concerns the parties hereto only, or Subcontractor and other subcontractors or suppliers, but not the Owner or his Engineer, the same shall be decided by Contractor whose decision thereon shall be final and conclusive.

        (d)    The Subcontractor shall proceed diligently with the Work, pending final determination pursuant to any disputes clause or pursuant to any other action taken with respect to a claim or claims.

    <u>Section 20</u>.    **Attorney's Fee**. In the event either party institutes suit in Court against the other party, or against the surety of such party, in connection with any disputes or matter arising under this Subcontract, the prevailing party shall be entitled to recover a reasonable attorney's fee in addition to any other relief granted by the Court.

    <u>Section 21</u>.    **Taxes**. Subcontractor shall pay all taxes, licenses, and fees of every nature which may be imposed or charged by any governmental authority upon the labor, material, or other things used in the performance of the Work or upon the transaction between the Contractor and Subcontractor.

    <u>Section 22</u>.    **Contractor's Equipment**. In the event that Subcontractor, by rental, loan or otherwise, makes use of any of Contractor's equipment, scaffolding, or other appliances, Subcontractor agrees to accept such "as is" and that such use shall be at the sole risk of Subcontractor and Subcontractor agrees to hold harmless and indemnify Contractor against all claims of every nature arising from his use thereof.

    <u>Section 23</u>.    **Furnished Material**. In the event that the Contractor or Owner, or their suppliers or subcontractors, elect to furnish material to the Subcontractor for use in connection with this Subcontract, then the cost of handling, storing and installation of such material shall be considered as included in the Subcontract price. The Subcontractor shall be and become responsible for all such materials upon delivery to him, whether delivered F.O.B. point of original or F.O.B. jobsite (except that any transportation charges paid by the Subcontractor, in the event of delivery F.O.B. point of origin, shall be reimbursed to Subcontractor) and shall pay all demurrage and storage charges which accrue after delivery. Furnished material lost or damaged after delivery, from any cause whatsoever, shall be replaced by or at the expense of the Subcontractor. Subcontractor shall, within forty-eight (48) hours after delivery of

**EXHIBIT 2**

furnished material, inspect the same and immediately report, in writing, to the Contractor any shortages, damages or defects therein which are reasonably observable by proper inspection. Failure to inspect and report and specified shall be treated as unqualified acceptance by Subcontractor of the material involved.

Section 24. **Equal Opportunity.** If the Prime Contract contains any provisions which prohibits discrimination on the basis of race, color, religion, sex or national origin, hereinafter referred to as Equal Opportunity, or if any law, regulation or order has any application thereto and is applicable to this Subcontract, then Subcontractor hereby agrees to comply with such provision, law, regulation or order. In the event that any such provision, law, regulation or order requires the physical attachment of specific working to this Subcontract, then such attachments shall be furnished by the Contractor and shall be considered a part of this Subcontract by reference thereto or shall be physically attached thereto as called for by the Contract.

Section 25. **Architect-Engineer.** The words "Architect" or "Engineer", as used herein, refer to the person appointed by the Owner to supervise the work of the Contractor on behalf of the Owner.

Section 26. **Assignment.** The Subcontractor shall not, in whole or in part, assign or sublet this Subcontract or the proceeds thereof without the written consent of the Contractor.

Section 27. **Specific Provisions.** Any reference herein or attachment hereto of specific provisions of the Prime Contract is for the purposes of emphasis and convenience in describing the obligations assumed by Subcontractor, or to comply with applicable laws or regulations. Such reference or attachment shall not be deemed to limit the obligations of the Subcontractor to perform all work and to furnish all material as called for by the entire Subcontract.

Section 28. **Prior Understanding or Representations.** The Contractor assumes no responsibility for any understanding or representations made by any of its officers or agents prior to the execution of this Subcontract, unless such understanding or representations by the Contractor are expressly stated in the Subcontract.

Section 29. **Required Subcontract Clauses.** Contract Clause 52.222-11, Subcontracts (Labor Standards) requires the Contractor to include the following clauses in their full text of this Subcontract. These clauses must also be included in any lower-tiered subcontracts on this Project. For the purpose of this contract, reference to Contractor in the following clauses will refer to Subcontractor and reference to Contracting Officer will refer to Contractor for the purpose of this subcontract.

**52.222-1 NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (Feb 1997)**

If the Contractor has knowledge that any actual or potential labor dispute is delaying or threatens to delay the timely performance of this contract, the Contractor shall immediately give notice, including all relevant information to, the Contracting Officer.

**52.222-4 CONTRACT WORK HOURS AND SAFETY STANDARDS ACT—OVERTIME COMPENSATION (Sept 2000)**

(a)     Overtime requirements. No Contractor or subcontractor employing laborers or mechanics (see Federal Acquisition Regulation 22.300) shall require or permit them to work over 40 hours in any workweek unless they are paid at least 1 and ½ times the basic rate of pay for each hour worked over 40 hours.

**EXHIBIT 2**

(b)     Violation; liability for unpaid wages; liquidated damages.  The responsible Contractor and subcontractor are liable for unpaid wages if they violate the terms in paragraph (a) of this clause. In addition, the Contractor and subcontractor are liable for liquidated damages payable to the Government. The Contracting Officer will assess liquidated damages at the rate of $10 per affected employee for each calendar day on which the employer required or permitted the employee to work in excess of the standard workweek of 40 hours without paying overtime wages required by the Contract Work Hours and Safety Standards Act.

(c) *Withholding for unpaid wages and liquidated damages*. The Contracting Officer will withhold from payments due under the contract sufficient funds required to satisfy any Contractor or subcontractor liabilities for unpaid wages and liquidated damages. If amounts withheld under the contract are insufficient to satisfy Contractor or subcontractor liabilities, the Contracting Officer will withhold payments from other Federal or federally assisted contracts held by the same Contractor that are subject to the Contract Work Hours and Safety Standards Act.

(d) *Payrolls and basic records.*
(1) The Contractor and its subcontractors shall maintain payrolls and basic payroll records for all laborers and mechanics working on the contract during the contract and shall make them available to the Government until 3 years after contract completion. The records shall contain the name and address of each employee, social security number, labor classifications, hourly rates of wages paid, daily and weekly number of hours worked, deductions made, and actual wages paid. The records need not duplicate those required for construction work by Department of Labor regulations at 29 CFR 5.5(a)(3) implementing the Davis-Bacon Act.
(2) The Contractor and its subcontractors shall allow authorized representatives of the Contracting Officer or the Department of Labor to inspect, copy, or transcribe records maintained under paragraph (d)(1) of this clause. The Contractor or subcontractor also shall allow authorized representatives of the Contracting Officer or Department of Labor to interview employees in the workplace during working hours.

(e) *Subcontracts*. The Contractor shall insert the provisions set forth in paragraphs (a) through (d) of this clause in subcontracts exceeding $100,000 and require subcontractors to include these provisions in any lower tier subcontracts. The Contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the provisions set forth in paragraphs (a) through (d) of this clause.

## 52.222-6 DAVIS-BACON ACT (Feb 95)

(a) All laborers and mechanics employed or working upon the site of the work will be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR part 3), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the Contractor and such laborers and mechanics. Contributions made or costs reasonably anticipated for bona fide fringe benefits under section 1(b)(2) of the Davis-Bacon Act on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of paragraph (d) of this clause; also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs which cover the particular weekly period, are deemed to be constructively made or incurred during such period. Such laborers and mechanics shall be paid not less than the appropriate wage rate and fringe benefits in the wage determination for the classification of work actually performed, without regard to skill, except as provided in the clause entitled Apprentices and Trainees. Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein; provided, That the employer's payroll records accurately set forth the time spent in each

## EXHIBIT 2

classification in which work is performed. The wage determination (including any additional classifications and wage rates conformed under paragraph (b) of this clause) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the Contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

(b)(1) The Contracting Officer shall require that any class of laborers or mechanics which is not listed in the wage determination and which is to be employed under the contract shall be classified in conformance with the wage determination. The Contracting Officer shall approve an additional classification and wage rate and fringe benefits therefor only when all the following criteria have been met:

(i) The work to be performed by the classification requested is not performed by a classification in the wage determination.

(ii) The classification is utilized in the area by the construction industry.

(iii) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

(2) If the Contractor and the laborers and mechanics to be employed in the classification (if known), or their representatives, and the Contracting Officer agree on the classification and wage rate (including the amount designated for fringe benefits, where appropriate), a report of the action taken shall be sent by the Contracting Officer to the Administrator of the:

> Wage and Hour Division
> Employment Standards Administration
> U.S. Department of Labor
> Washington, DC 20210

The Administrator or an authorized representative will approve, modify, or disapprove every additional classification action within 30 days of receipt and so advise the Contracting Officer or will notify the Contracting Officer within the 30-day period that additional time is necessary.

(3) In the event the Contractor, the laborers or mechanics to be employed in the classification, or their representatives, and the Contracting Officer do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), the Contracting Officer shall refer the questions, including the views of all interested parties and the recommendation of the Contracting Officer, to the Administrator of the Wage and Hour Division for determination. The Administrator, or an authorized representative, will issue a determination within 30 days of receipt and so advise the Contracting Officer or will notify the Contracting Officer within the 30-day period that additional time is necessary.

(4) The wage rate (including fringe benefits, where appropriate) determined pursuant to paragraphs (b)(2) and (b)(3) of this clause shall be paid to all workers performing work in the classification under this contract from the first day on which work is performed in the classification.

(c) Whenever the minimum wage rate prescribed in the contract for a class of laborers or mechanics includes a fringe benefit which is not expressed as an hourly rate, the Contractor shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

(d) If the Contractor does not make payments to a trustee or other third person, the Contractor may consider as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program; provided, That the Secretary of Labor has found, upon the written request of the Contractor, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the Contractor to set aside in a separate account assets for the meeting of obligations under the plan or program.

**52.222-7  WITHHOLDING OF FUNDS (FEB 1988)**

**EXHIBIT 2**

The Contracting Officer shall, upon his or her own action or upon written request of an authorized representative of the Department of Labor, withhold or cause to be withheld from the Contractor under this contract or any other Federal contract with the same Prime Contractor, or any other federally assisted contract subject to Davis-Bacon prevailing wage requirements, which is held by the same Prime Contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees, and helpers, employed by the Contractor or any subcontractor the full amount of wages required by the contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee, or helper, employed or working on the site of the work, all or part of the wages required by the contract, the Contracting Officer may, after written notice to the Contractor, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased.

## 52.222-8 PAYROLLS AND BASIC RECORDS (FEB 1988)

(a) Payrolls and basic records relating thereto shall be maintained by the Contractor during the course of the work and preserved for a period of 3 years thereafter for all laborers and mechanics working at the site of the work. Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in section 1(b)(2)(B) of the Davis-Bacon Act), daily and weekly number of hours worked, deductions made, and actual wages paid. Whenever the Secretary of Labor has found, under paragraph (d) of the clause entitled Davis-Bacon Act, that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in section 1(b)(2)(B) of the Davis-Bacon Act, the Contractor shall maintain records which show that the commitment to provide such benefits is enforceable, that the plan or program is financially responsible, and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. Contractors employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs.

(b)(1) The Contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to the Contracting Officer. The payrolls submitted shall set out accurately and completely all of the information required to be maintained under paragraph (a) of this clause. This information may be submitted in any form desired. Optional Form WH-347 (Federal Stock Number 029-005-00014-1) is available for this purpose and may be purchased from the-

Superintendent of Documents
U.S. Government Printing Office
Washington, DC 20402

The Prime Contractor is responsible for the submission of copies of payrolls by all subcontractors.

(2) Each payroll submitted shall be accompanied by a "Statement of Compliance," signed by the Contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the contract and shall certify-
(i) That the payroll for the payroll period contains the information required to be maintained under paragraph (a) of this clause and that such information is correct and complete;
(ii) That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in the Regulations, 29 CFR part 3; and

**EXHIBIT 2**

(iii) That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the contract.

(3) The weekly submission of a properly executed certification set forth on the reverse side of Optional Form WH-347 shall satisfy the requirement for submission of the "Statement of Compliance" required by paragraph (b)(2) of this clause.

(4) The falsification of any of the certifications in this clause may subject the Contractor or subcontractor to civil or criminal prosecution under Section 1001 of Title 18 and Section 3729 of Title 31 of the United States Code.

(c) The Contractor or subcontractor shall make the records required under paragraph (a) of this clause available for inspection, copying, or transcription by the Contracting Officer or authorized representatives of the Contracting Officer or the Department of Labor. The Contractor or subcontractor shall permit the Contracting Officer or representatives of the Contracting Officer or the Department of Labor to interview employees during working hours on the job. If the Contractor or subcontractor fails to submit required records or to make them available, the Contracting Officer may, after written notice to the Contractor, take such action as may be necessary to cause the suspension of any further payment. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

## 52.222-9  APPRENTICES AND TRAINEES  (FEB 1988)

(a) *Apprentices*. Apprentices will be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Bureau of Apprenticeship and Training, or with a State Apprenticeship Agency recognized by the Bureau, or if a person is employed in his or her first 90 days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been certified by the Bureau of Apprenticeship and Training or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice. The allow- able ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the Contractor as to the entire work force under the registered program. Any worker listed on a payroll at an apprentice wage rate, who is not registered or otherwise employed as stated in this paragraph, shall be paid not less than the applicable wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where a contractor is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the Contractor's or subcontractor's registered program shall be observed. Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination. In the event the Bureau of Apprenticeship and Training, or a State Apprenticeship Agency recognized by the Bureau, withdraws approval of an apprenticeship program, the Contractor will no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(b) *Trainees*. Except as provided in 29 CFR 5.16, trainees will not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration. The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Every trainee must be paid at not less than the rate specified

**EXHIBIT 2**

in the approved program for the trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed in the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman wage rate in the wage determination which provides for less than full fringe benefits for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate in the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate in the wage determination for the work actually performed. In the event the Employment and Training Administration withdraws approval of a training program, the Contractor will no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(c) *Equal employment opportunity.* The utilization of apprentices, trainees, and journeymen under this clause shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR part 30.

### 52.222-10 COMPLIANCE WITH COPELAND ACT REQUIREMENTS (FEB 1988)

The Contractor shall comply with the requirements of 29 CFR Part 3, which are hereby incorporated by reference in this contract.

### 52.222-11 SUBCONTRACTS (LABOR STANDARDS) (FEB 1988)

(a) The Contractor or subcontractor shall insert in any subcontracts the clauses entitled Davis-Bacon Act, Contract Work Hours and Safety Standards Act-Overtime Compensation, Apprentices and Trainees, Payrolls and Basic Records, Compliance with Copeland Act Requirements, Withholding of Funds, Subcontracts (Labor Standards), Contract Termination-Debarment, Disputes Concerning Labor Standards, Compliance with Davis-Bacon and Related Act Regulations, and Certification of Eligibility, and such other clauses as the Contracting Officer may, by appropriate instructions, require, and also a clause requiring subcontractors to include these clauses in any lower tier subcontracts. The Prime Contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with all the contract clauses cited in this paragraph.

(b)(1) Within 14 days after award of the contract, the Contractor shall deliver to the Contracting Officer a completed Statement and Acknowledgment Form (SF 1413) for each subcontract, including the subcontractor's signed and dated acknowledgment that the clauses set forth in paragraph (a) of this clause have been included in the subcontract.

(2) Within 14 days after the award of any subsequently awarded subcontract the Contractor shall deliver to the Contracting Officer an updated completed SF 1413 for such additional subcontract.

### 52.222-12 CONTRACT TERMINATION –DEBARMENT (FEB 1988)

A breach of the contract clauses entitled Davis-Bacon Act, Contract Work Hours and Safety Standards Act-Overtime Compensation, Apprentices and Trainees, Payrolls and Basic Records, Compliance with Copeland Act Requirements, Subcontracts (Labor Standards), Compliance with Davis-Bacon and Related Act Regulations, or Certification of Eligibility may be grounds for termination of the contract, and for debarment as a Contractor and subcontractor as provided in 29 CFR 5.12.

Subcontract - Page 13 of 16

**EXHIBIT 2**

**52.222-13 COMPLIANCE WITH DAVIS-BACON AND RELATED ACT REGULATIONS (FEB 1988)**

All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 CFR parts 1, 3, and 5 are hereby incorporated by reference in this contract.

**52.222-14 DISPUTES CONCERNING LABOR STANDARDS (FEB 1988)**

The United States Department of Labor has set forth in 29 CFR parts 5, 6, and 7 procedures for resolving disputes concerning labor standards requirements. Such disputes shall be resolved in accordance with those procedures and not the Disputes clause of this contract. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

**52.222-15 CERTIFICATION OF ELIGIBILITY (FEB 1988)**

(a) By entering into this contract, the Contractor certifies that neither it (nor he or she) nor any person or firm who has an interest in the Contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

(b) No part of this contract shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

(c) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

     Section 30.    **Captions.** The captions at the beginning of each Section of this Subcontract are for convenience only and are to be given no weight in construing the provisions of this Subcontract.

IN WITNESS WHEREOF, the parties have executed this Subcontract by their proper officers or duly authorized agents.

CONTRACTOR (Name)                  SUBCONTRACTOR (Name).
TESTER DRILLING SERVICES, INC.       PRECISION CRANES, INC.

BY:                                   BY:
Print: Peter B. Tester                Print: _Fred Buy Kindell Jr_

Address:  2221 Cinnabar Loop         Address: PO Box 56646
Anchorage, Alaska 99507          North Pole, Alaska 99705

Phone: 907-349-7214             Phone: _907 590 Ha22_

Subcontract - Page 14 of 16       **EXHIBIT 2**

Fax: 907-349-3787                    Fax: _907451 7775_____

**EXHIBIT 2**



**TRAVELERS**

33650 6th Avenue So., Suite 200
Federal Way, WA 98003
Toll Free : (800) 842-8496

Paul Harmon
Claim Counsel
Bond & Specialty Insurance Claim
Phone: (253) 943-5825
Fax: (866) 842-9201
Email: pharmon@travelers.com

March 12, 2018

Via email: brent@akcolelaw.com

Brent R. Cole
Woelber & Cole, LLC
821 N Street, Suite 208
Anchorage, AK 99501

Re:  Surety:     Travelers Casualty and Surety Company of America
     File No.    091-SC-T1800817-NR
     Bond No.:   081-SB-106721293

     Surety:     Liberty Mutual Insurance Company
     File No.:   023038282.2
     Bond No.:   023038282

     Principal:  Unit-ASRC Construction, LLC
     Project:    LRDR Construction Pkg 1-Site Infrastructure, MCF & Substation, Clear AFS
                 Contract W911KB-17-C-0002
     Obligee:    U.S. Army Engineer District, Alaska
     Claimant:   Precision Cranes, Inc.

Dear Mr. Cole:

Travelers Casualty and Surety Company of America ("Travelers"), on behalf of itself and Liberty Mutual Insurance Company ("Liberty"), conducted a thorough investigation and determined that the claim by your client Precision Cranes, Inc. ("Precision") on the payment bond referenced above is not covered by the bond referenced above. Precision's claim is respectfully denied because, based on the information Travelers and Liberty have received to date, it appears that the labor and materials furnished by Precision did not advance construction of the project covered by the bond, and in fact may have caused Unit-ASRC Construction, LLC ("Unit-ASRC") to incur damages.

Precision indicates on its claim form that it was a subcontractor to Tester Drilling Services, Inc. ("Tester"). Tester was a subcontractor to Unit-ASRC. Precision alleges that it is owed $594,411.17 plus interest for crane rental services. It appears that Precision provided two cranes, a service truck and crew members to operate the crane. In support of its claim, Precision has provided (1) correspondence related to the project; (2) specificiations for the work; (3) invoices and price quotes; and (4) a copy of its subcontract with Tester.

In response to Precision's claim, Unit-ASRC asserts that Tester failed to advance the work. Unit-ASRC sent Tester several cure notices, and notices that Unit-ASRC had incurred damages due to Tester's failure to perform. Ultimately, Unit-ASRC terminated Tester and prosecuted Tester's scope of work by other means, thereby incurring costs over and above the funds available under Tester's subcontract. While Precision is not Tester, the crane rental services that Precision provided to Tester are closely bound with Tester's scope of work on the project, and Tester's failed performance appears to have been caused at least in part by the defective performance of Precision.

The Miller Act requires that, for any contract of more than $100,000 for the construction of a project for the Federal Government, the contractor must provide a payment bond "...for the protection of all persons supplying labor and material in carrying out the work provided for in the contract... ." 40 U.S.C. § 3131(b)(2).

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

If possible, please send future communications and documents concerning this claim via email to pharmon@travelers.com
Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

**EXHIBIT 3**

**Travelers**

March 12, 2018
Page 2

Courts tend to give a liberal interpretation to statutes which are intended to secure payment to parties furnishing labor and material for construction projects. See, for example, *U.S. for Use and Benefit of Daniel H. Hill v. American Sur. Co.*, 200 U.S. 197, 202 (1906). However, courts have refrained from attempting to create an all-inclusive definition of "labor" or "materials" under the Miller Act. See, for example, *U.S. for Use and Benefit of J.P. Byrne & Co., Inc. v. Fire Assoc. of Philadelphia*, 260 F.2d 541 (2nd Cir. 1958). Rather, one of the most important considerations when evaluating a Miller Act payment bond claim is whether the labor or materials in question actually moved the project toward completion. See, for example, *U.S. for Use and Benefit of Olson v. W.H. Cates Const. Co., Inc.*, 972 F.2d 987, 991-92 (8th Cir. 1992).

Despite the liberal interpretation courts tend to take toward the Miller Act, if the labor or materials provided by a payment bond claimant simply did not advance the construction project, the claimant is not entitled to recovery from the surety. Further still, the claimant is not entitled to recovery under the payment bond if the claimant caused the principal to incur damages. Precision's claim is respectfully denied because, based on the information that Travelers has received to date, it appears that Precision did not advance construction of the project, and likely contributed to damages incurred by Unit-ASRC in prosecuting Tester's scope of work.

We will of course be available to you to discuss the position we have taken. If you have questions, you may contact me at the phone number listed above.

Our decision is based upon the information made available to date. If you have any additional information which you believe may affect our determination, we ask that you please send this to us.

Please understand that our attention to this matter should not be construed as a waiver of any right or defense which may be available to Travelers, Liberty or Unit. Rather, all rights and defenses available to Travelers, Liberty or Unit are hereby specifically reserved.

Sincerely,

Paul Harmon
Claim Counsel

cc:     Unit - ASRC Construction, LLC
        Ranae Smith, Liberty Mutual (Ranae.Smith@LibertyMutual.com)

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••
If possible, please send future communications and documents concerning this claim via email to pharmon@travelers.com
Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).
**EXHIBIT 3**