WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Brent R. Cole
Woelber & Cole, LLC
821 N Street, Suite 208
Anchorage, AK 99501
(907) 277-8001
brent@woelbercole.com
info@woelbercole.com

Attorneys for Precision Cranes, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA for the use and benefit of PRECISION CRANES, INC., an Alaska corporation,

Plaintiff,

vs.

TESTER DRILLING SERVICES, INC., an Alaska corporation; TRAVELERS CASUALTY AND SURETY CO. OF AMERICA, a Connecticut corporation; and LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation (Bond #106721293)

Defendants.

Case No.: 4:18-cv-00019-TMB

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RULE 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Plaintiff Precision Cranes, Inc. ("Precision") has moved this Court for an order granting partial summary judgment in its favor and against Defendants Travelers Casualty and Surety Company of America and Liberty Mutual

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 1 of 20

Insurance Company (Bond #106721293) (collectively "the Sureties") on its Miller Act claim for unpaid amounts due on its subcontract to supply equipment and labor to subcontractor Tester Drilling Services, Inc. ("TDSI") for use on the Long Range Discrimination Radar Construction project at the Clear Air Force Station in Clear, Alaska. Specifically, TDSI has failed to pay rental and labor fees totaling $577,312.31 for equipment Precision supplied and operated for use on the government project. The Miller Act was enacted to protect suppliers, such as Precision, from nonpayment. As a matter of law, Precision has presented a prima facie case for relief under the Miller Act and is entitled to judgment as a matter of law against defendant Sureties.

## I. UNDISPUTED FACTS

### A. Relevant Contract Formation

Unit-ASRC Construction, LLC ("UNIT") executed a contract with the U.S. government to construct a mission control facility, the Long Range Discrimination Radar Construction Package #1 – Site Infrastructure, MCF and Substation at the Clear Air Force Station in Clear, Alaska ("the Project"). The Project was administered by the U.S. Army Corps of Engineers ("USACE"). UNIT, the prime government contractor on the Project, furnished a payment bond in the amount of $112,949,720 as required by the Miller Act, 40 U.S.C. §3131(b)(2). *See* Exh. 1, BOND #106721293 ("Payment Bond"). The payment bond was executed by the defendant Sureties, Traveler Casualty and Surety Company of America and Liberty Mutual Insurance Company, on May 2, 2017. *Id.*

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 2 of 20

UNIT subcontracted with Tester Drilling Services, Inc. ("TDSI") to perform a portion of the work required under the prime contract. *See* Exh. 2, UNIT-TDSI Contract. The contract between UNIT and TDSI was executed by UNIT on July 12, 2017 and by TDSI on July 10, 2017. TDSI's scope of work under the subcontract included, without limitation: provision of eight (8) cased wellbores on the Project site; drilling of the wellbores utilizing temporary casing; placement of permanent stainless-steel casing in the wellbores; welding of permanent casing as required; and placement of screens per specifications. *See* Exh. 2 at pg. 2, UNIT-TDSI Contract.

TDSI, in turn, subcontracted with Precision to provide crane services to TDSI to support its work on the government Project. *See* Affidavit of Fred Kuykendall, Sr.; Exh. 8, Precision Subcontract at p. 17. Prior to executing the subcontract, Precision provided "Quote #11099" to TDSI on January 24, 2017, which provided monthly rental rates for a variety of cranes, noting unlimited hours. *See* Exh. 3, Precision Quote of 24-Jan-2017, Exh 4, and Exh 5 TDSI Email String Beginning January, 18, 2019. Quote #11099 also provided a variety of hourly rates and charges relevant to labor "Man Hours" and that fuel and room/board were to be provided by the customer. *Id.* On July 6, 2017, Precision sent TDSI an e-mail inquiry regarding schedule, start date, duration, manpower, and whether day/night shifts would be required. *See* Exh. 6. In this enquiry, Precision offered a 100-Ton RT to "feed the pile and pick the rotator" and a "100T lattice crane" to "handle the

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

bucket". TDSI did not object to the proposed provision of these cranes and on July 10, 2017, TDSI sent an e-mail to Precision with the following pertinent information:

- Both cranes to be onsite July 27th;
- Start drilling no later than August 3rd;
- Start second shift on August 5th;
- 2 operators and 1 rigger per shift;
- An overall estimate of 40-45 days with about 10 shifts per hole

*See* Exh. 4 and Exh. 6, TDSI e-mail of July 10, 2017.

On July 18, 2017, Precision provided TDSI with "Quote # 11227" for monthly rental, mobilization, and demobilization of a 100T RTC 80100 crane, with fuel to be provided by customer. *See* Exh. 4 and Exh. 7 at p. 2, e-mail transmitting Precision Quote No. 11227. Precision's submission of Quote #1227 to TDSI was accompanied by a variety of insurance information, activity hazard analyses, and other data. *Id*., p. 10-45. Included in this other data was a list of ten potential crane operators and riggers (which list included Precision management personnel). *Id*., at p. 6-7.

On July 18, 2017, Precision executed the subcontract with TDSI to provide crane services. *See* Exh. 8, contract between TDSI and Precision (the "Precision Subcontract").

**B. Precision's Activities on the Government Project**

Precision mobilized a 100-ton rated rough terrain / rubber tired hydraulic crane (the "Link-Belt Crane") and a 100-ton rated crawler crane (the "Lattice Crane") to the Project

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 4 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

site with both cranes on site on or about July 28, 2017. *See* Exh. 6 and Exh. 10, Email and TDSI daily report noting mobilization. Precision supplied (with operators) the Link-Belt Crane, the Lattice Crane, a service/pickup truck, and a variety of lifting hardware and miscellaneous appurtenances for use on the Project. Exh. 4, Affidavit of Fred Kuykendall, Sr. at paragraph 18.

The Lattice Crane remained on the project site until October 13, 2017 and the Link-Belt crane remained on site until October 15, 2017. *See* Exh. 4; Exh. 11, TDSI daily report noting demobilization; and Exh. 12, TDSI daily report noting removal of the Lattice Crane. Both cranes were demobilized by Precision in response to TDSI's communications on October 12, 2017 that (i) rental on the Link-Belt crane ("80100 hydraulic crane") would terminate effective end of work on October 15, 2017; and (ii) that the rental on the Lattice crane ("5100 lattice boom crane") was terminated. *See* Exh. 13, TDSI e-mails of October 12 / October 18, 2017; Exh. 14, TDSI e-mail of October 12, 2017. Scott Polecat, an person hired by TDSI but on Precision's payroll worked until October 1, 2017. See Exh. 4; Affidavit of Fred Kuykendall, Sr. at paragraphs 19 and 21.

From July 28, 2017 until October 15, 2017, Precision provided equipment, services and labor for use on the government Project as per direction from TDSI, including:

- Operating Lattice Crane to utilize a Spherical Grab (hereinafter the "Hammer Grab"). This Hammer Grab was supplied by TDSI.

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 5 of 20

- Operating Link-Belt crane to handle casing sections and to move various equipment such as Power Packs, Oscillators, etc. The Power Packs, Oscillators, and casing (of various diameters) were all specified and supplied by TDSI.
- Removal / extraction of casing sections previously installed.

*See* Exh. 4, Affidavit of Fred Kuykendall, Sr. at paragraph 20.

During the time that Precision provided crane services, TDSI was unable to make scheduled progress on TDSI's scope. The reasons for this delay ranged from routine to catastrophic:

- TDSI experienced "moderately hard to difficult" drilling on August 7, 2017; ()
- TDSI's Grab is "not working properly" on August 9, 2017 ()
- TDSI experienced "slow advancement" on August 11, 2017 ()
- TDSI substituted a new Hammer Grab on August 14, 2017 ()
- TDSI installed a section of out-of-tolerance casing and had to extract that casing on August 22, 2017 ()
- TDSI experience thirteen (13) hours downtime (0700 – 2000 hours) on the Rotator Power Pack due to electrical problem(s) ()
- TDSI notes that "Sand/silt layer are extremely difficult to penetrate" on August 28, 2017.
- TDSI shears casing on Well D90001 on August 28, 2017. This casing repair (and progress on this well) is not completed until October 7, 2017.

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 6 of 20

*See* Exh. 15, various TDSI daily reports.

On October 16, 2017, UNIT terminated TDSI's contract on the Project for convenience. *See* Exh. 16, UNIT termination letter.

Commencing August 30, 2017, Precision tendered multiple invoices to TDSI seeking payment for the cranes and personnel provided to TDSI for use on the Project:

- Invoice No. 3343 in the amount of $278,045.62 submitted August 30, 2017
  - Resubmitted on October 23, 2017 in the amount of $270,063.44 after redacting interest amounts;
- Invoice No. 3349 in the amount of $183,994.06 submitted September 22, 2017
  - Resubmitted on September 29, 2017 in the amount of $178, 635 after redacting interest amounts;
- Invoice No. 3361 in the amount of $125,550.69 submitted October 12, 2017
  - Redaction of interest reduces this amount to $121,893.87.
- Invoice No. 3366 in the amount of $6,820.00 submitted on November 3, 2017
  - Resubmitted on November 3, 2017 in the amount of $6,720 after redacting interest amounts.

These invoices total (with redaction of interest amounts) $577,312.31. Precision's invoices have not been paid by TDSI. *See* Exh. 4 and Exh. 17, Precision Invoices.

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 7 of 20

On December 1, 2017, Precision provided UNIT with written notice that Precision provided equipment to and performed labor for TDSI on the Project, that TDSI had not paid Precision for the equipment and labor, and that Precision was owed $577,312.31. Exh. 18. On March 12, 2018, the surety defendants denied Precision's claims in total noting that Precision's labor and materials "did not advance the construction project." *See* Exh. 19.

On April 23, 2018, Precision filed a Complaint in state court invoking its rights under the Miller Act to recover outstanding amounts owed on the Precision Subcontract against the payment bond. *See* Complaint. This Case was later removed to federal court by Unit.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Karuk Tribe of California v. United States Forest Service,* 681 F.3d 1006 (9th Cir. 2012) (*en banc*). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Once the moving party has met its initial burden, the non-moving party is required to go beyond the pleadings and identify facts which show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere disagreement about a material issue of fact is not enough to preclude summary judgment. *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 8 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

1987). Likewise, neither a "mere scintilla of evidence" (*U.S. v. Travelers Cas. Sur. Co. of America*, 635 F. Supp. 2d 434, 437 (E.D. Va. 2009)(internal citations omitted)) nor evidence that is "merely colorable" (*U.S. ex Rel. McKenney's v. Government Technical*, 531 F. Supp. 2d 1375 (N.D. Ga. 2008)(internal citations omitted)) suffices to defeat summary judgment.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a).

## III. ARGUMENT

### A. As a Matter of Law, Precision Has Established a Prima Facie Case for Payment Under the Miller Act.

"The Miller Act is the modern-day remedy to the historical dilemma faced by contractors and materialmen denied compensation in federal construction projects." *Technica LLC v. Carolin Casualty Ins. Co.*, 749 F.3d 1149, 1151 (9th Cir. 2014). The common law doctrine of sovereign immunity prevented liens against property of the federal government, and federal statutes only allowed those in privity of contract with the government to sue to enforce contractual rights. *Id.* Recognizing that other parties who contribute to the performance of a federal construction contract should be assured payment of their claims, Congress first enacted the Heard Act in 1894, which was replaced by the Miller Act in 1935. *Id.*

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 9 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

The Miller Act requires a general contractor on a federal construction project to furnish a payment bond "'for the protection of all persons supplying labor and material in carrying out the work provided for in the contract.'" *Id.* at 1152 (quoting 40 U.S.C. § 3133(b)(2)). The Act provides:

> Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government the following bonds, which become binding when the contract is awarded:
>
> . . .
>
> A payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person. . . .

40 U.S.C. § 3131(b)(2).

Under the Miller Act, every person who has furnished labor or material in carrying out work on a federal construction project and who "has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due." 40 U.S.C. § 3133(b)(1)). The Miller Act explicitly extends to sub-subcontractors, like Precision, the right to file and prosecute an action against a prime contractor's payment bond. *Technica LLC v. Carolin Casualty Ins. Co.*, 749 F.3d at 1152 (citing 40 U.S.C. § 3133(b)(2) ("A person having a direct contractual relationship with a subcontractor but no contractual relationship, express

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 10 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond . . . .")). Because the Miller Act provides Precision a federal cause of action, "'the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law.'" *Id.* (quoting *F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co.,* 417 U.S. 116, 127 (1974)). "'The Miller Act is highly remedial in nature, and 'is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects.'" *Id.* (citations omitted).

In an action brought under the Miller Act, establishment of a subcontractor's claim is not dependent upon a showing that the labor or materials furnished were of benefit to the prime contractor. *United States ex rel. Warren Painting Co. v. J.C. Boesplug Construction Co.*, 325 F.2d 54, 62 (9th Cir. 1963). Rather, "[a]ll that is required is proof that the labor or material was furnished in the prosecution of the work provided for in the prime contract, and that the subcontractor has not been paid therefor." *Id.* In order to prevail under the Miller Act, a materials and labor supplier need only prove four elements: (1) the materials were supplied in prosecution of the work provided for in the contract; (2) the supplier has not been paid; (3) the supplier had a good faith belief that the materials were intended for the specified work; and (4) the jurisdictional requisites were met. *United States ex rel. Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 761 (9th Cir. 1984). And it is well-established that equipment rentals are "labor and materials" protected

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 11 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

by Miller Act payment bonds. *United States ex rel. Chemetron Corp. v. George A. Fuller Co.*, 250 F.Supp. 649, 661 (D.Mont. 1965) ("Rental charges for equipment furnished to perform work on the contract are recoverable under the bond."); *See also United States ex rel. Thyssenkrupp Safway, Inc. v. Tessa Structures, LLC*, No. 1:10cv512 (E.D. Va. 2011) (attached hereto as Exh. 19) (granting summary judgment to sub-subcontractor on claim under Miller Act for equipment rented to subcontractor); *United States ex rel. Walton Technology, Inc. v. Westar Engineering, Inc.*, 290 F.3d 1199 (9th Cir. 2002) (subcontractor on federal construction project claimed prime contractor failed to pay rental fees for equipment it rented for use on the project).

The undisputed facts in the record establish a prima facie case for payment under the Miller Act. First, the materials were supplied in prosecution of the work provided for in the contract. UNIT, the government prime contractor, subcontracted with TDSI to provide all supervision, labor, materials, supplies, equipment, tools and incidentals necessary to complete the water-supply well construction, development and pumping tests specification section under the Main Contract between UNIT and the government for the construction of the Long Range Discrimination Radar Site Infrastructure, MCF and Substation located at Clear Air Force Station. Exh. 2, pg. 1. TDSI's scope of work on the Project included: drill and install casing and screens in eight locations; supply all drilling tools and equipment; complete welding; perform plumbness check; set all screens;

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 12 of 20

extract casing and set the seal; and furnish and install all screens and hardware. *Id.* at pg. 2.

TDSI, in turn, subcontracted with Precision to "furnish all supervision, labor, tools, equipment, any special materials, tools and supplies necessary to perform, and to perform" the Work at the Project. Exh. 8, pg. 1. The Precision Subcontract provides, in part:

> **WHEREAS,** the contractor has entered into a contract dated the 7th day of July, 2017, with UNIT-ASRC Construction, LLC, hereinafter referred to as the Owner, for the Long Range Discrimination Radar (LDRD) Construction Package #1 – Site Infrastructure, MCF and substation, hereinafter referred to as the project, at Clear AFS, Alaska.
>
> . . .
>
> Section 1: Contract Documents. The term "Prime Contract" as used herein refers to all the General and Special Conditions, Drawings, Specifications, Addenda, Amendments, Modifications and all other documents forming or by reference made a part of the contract between the Contractor and Owner. All of the aforesaid shall be considered a part of this Subcontract by reference thereto and the Subcontractor agrees to be bound to the Contractor and Owner by the terms and provisions thereof, so far as they apply to the Work hereinafter described.
>
> Section 2: The Work. The Subcontractor agrees to furnish all supervision, labor, tools, equipment, any special materials, tools and supplies necessary to perform, and to perform between July 27th to October 8th 2017 the following described work hereinafter referred to as the Work. Provide crane services to support the installation of 8 each 36"x300' deep Water Wells. Work will proceed 7 days per week/24 hrs. per day with two cranes. Work includes operating crane to provide grab services while cleaning out 900 mm x 820 mm casings. Operate 2nd crane to provide support services to support casing and well installation.
>
> CLARIFICATION: Unit rates per Precision proposal of 1/24/17&7/18/17, not to exceed $675,000.00
> TOTAL SUBCONTRACT AMOUNT: NTE $675,000

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 13 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

*See* Exh. 8, Precision Subcontract, page 1.

It is undisputed that Precision performed the crane services, including equipment rental and labor, for the Project as required by the Precision Subcontract from July 28, 2017 until October 15, 2017. Exh. 4, Affidavit of Fred Kuykendall, Sr.; Exh. 17, Precision Invoices. Second, it is undisputed that Precision has not been paid. *Id*. *See United States ex rel. Hawaiian Rock Products Corp. v. A.E. Lopez Enterprises, Ltd.*, 74 F.3d 972, 975 (9th Cir. 1996) ("Appellees, Hawaiian Rock and Guam Concrete easily meet the first and second elements for relief. The record includes invoices and delivery tickets that indicate that Hawaiian Rock and Guam Concrete supplied materials to A.E. Lopez, apparently for use in the Anderson Air Force Base driveway project. Further, there is no question that A.E. Lope failed to pay them for those materials.").

Third, Precision's good faith belief as to the use of the equipment and labor is not at issue, since it is also undisputed that all crane services provided -- equipment rental and labor -- were used in the Project. Exh. 4, Affidavit of Fred Kuykendall, Sr.; Exh. 17, Precision Invoices. *See United States ex rel. Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d at 761 ("Martin's good faith belief as to the use of goods is not at issue, since it is undisputed that all goods supplied were eventually used in the project."); *United States ex rel. Hawaiian Rock Products Corp. v. A.E. Lopez Enterprises, Ltd.*, 74 F.3d at 975 ("As for the third element, Hawaiian Rock and Gaum Concrete appear to have had a good faith belief that the use of the construction materials was for the

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 14 of 20

driveway project. A.E. Lopez does not dispute that the materials supplied were used in the project; nor is there any evidence that the materials supplied were not what was ordered."). Further, TDSI's alleged breach of its subcontract with UNIT does not preclude Precision from recovering under the Miller Act payment bond. *United States ex rel. Thyssenkrupp Safway, Inc. v Tessa Structures, LLC,* No. 1:10cv512 (E.D. Va. 2011) (attached hereto as Exh. 19) is instructive.

In *Tessa Structures,* the court granted summary judgment in favor of the sub-subcontractor on its Miller Act claim. In that case, Vista contracted with the FBI for restoration and repair work at an FBI academy. Vista entered into a subcontract with Tessa pursuant to which Tessa agreed to provide masonry repair work for the project. Tessa in turn hired Safway as a scaffolding supplier, making Safway a sub-subcontractor on the project. Tessa and Safway entered into rental agreements and Safway furnished equipment to Tessa for use in the Project. Safway tendered invoices to Tessa for this work, but Tessa did not pay the amounts due. Vista terminated Tessa's subcontract, asserting that Tessa's performance under the subcontract was deficient. Safway filed suit against Vista and Fidelity under the Miller Act. Vista and Fidelity argued that because Tessa was in breach of the subcontract, Safway was not entitled to recover under the Miller Act payment bond. Rejecting their argument, the court first noted that the Ninth Circuit forbids the general contractor from raising a recoupment-like "set off" defense for a supplier's defective shipments where the supplier and general contractor are not in privity. *United States ex*

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 15 of 20

*rel. Martin Steel Constructors v. Avanti Steel Constructors,* 750 F.2d 759, 762 (9th Cir. 1984). Further, Vista and Fidelity provided no evidence that Safway was in breach of its rental agreements with Tessa or that Safway provided any deficient scaffolding to the project.

Likewise, the fact that UNIT terminated TDSI's contract asserting that TDSI's performance under the contract was deficient does not preclude Precision from recovering under the Miller Act payment bond. And Precision is not required to show that the labor and equipment it furnished were of benefit to the prime contractor, UNIT, in order to recover under the Miller Act payment bond. *United States ex rel. Warren Painting Co. v. J.C. Boesplug Construction Co.*, 325 F.2d 54, 62 (9th Cir. 1963).

Finally, Precision has met the jurisdictional requirements by timely notice and filing. The Miller Act provides:

> A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made. The action must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.

40 U.S.C. § 3133(b)(2). An action brought under the Miller Act must be filed "no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). Here, Precision

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 16 of 20

provided written notice to the Miller Act prime contractor, UNIT, on December 1, 2017--before the expiration of 90 days after October 15, 2017, the last day on which labor was done and equipment was furnished. Exh. 4, Affidavit of Fred Kuykendall, Sr.; Exh.18, notice. Because neither TDSI, UNIT nor the Sureties paid Precision the amounts due, Precision commenced suit on April 23, 2018, before the expiration of one year from October 15, 2017. *See* Complaint.

Thus, Precision easily satisfies the four elements for relief under the Miller Act and is entitled to judgment as a matter of law against defendant Sureties.

**B. As a Matter of Law, Precision is Entitled to an Award of its Reasonable Attorney's Fees.**

Precision is entitled to its reasonable attorneys' fees as part of its Miller Act claim against the Sureties. The Precision Subcontract provides:

> Section 20. **Attorney's Fee.** In the event either party institutes suit in Court against the other party, or against the surety of such party, in connection with any disputes or matter arising under this Subcontract, the prevailing party shall be entitled to recover a reasonable attorney's fee in addition to any other relief granted by the Court.

Exh. 8 at pg. 7. Under federal law, such a contractual obligation for attorney fees becomes part of the compensation due the subcontractor under the Miller Act. *Travelers Indemnity Co. v. United States ex rel. Western Steel Co.*, 362 F.2d 896, 899 (9th Cir. 1966). In *United States ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 86 F.3d 332 (4th Cir. 1996), the court explained that the Miller Act does not, by its own terms, provide for attorney's fees or interest. *Id.* at 336. However, several circuits, including the Ninth

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 17 of 20

Circuit, have held that "interest and attorney's fees are recoverable if they are part of the contract between the subcontractor and supplier." *Id.* (citing *United States ex rel. Southeastern Municipal Supply Co., Inc. v. Nat'l Union Fire Ins. Co.*, 876 F.2d 92, 93 (11th Cir. 1989) (attorney's fees provision); *United States ex rel. Carter Equip. Co. v. H.R. Morgan, Inc.*, 554 F.2d 164, 166 (5th Cir. 1977) (attorney's fees); *Travelers Indemnity Co. v. United States,* 362 F.2d 896, 899 (9th Cir. 1966) (attorney's fees); *D& L Construction Co. v. Triangle Elec. Supply Co.*, 332 F.2d 1009, 1013 (8th Cir. 1964 (interest and attorney's fees). The Fourth Circuit reasoned that "[t]he rationale of those decisions -- that attorney's fees and interest may be 'sums justly due' under the Miller Act -- is consistent with this court's rulings that contractors and their sureties are obligated to pay amounts owed by their subcontractors to suppliers." *Id.* at 336 (holding that if Maddux was entitled to interest and attorney's fees under its contract with Chapman, it may recover interest and fees from Hill and St. Paul). *See also United States ex rel. Thyssenkrupp Safway, Inc. v Tessa Structures, LLC,* No. 1:10cv512 (E.D. Va. 2011) (attached hereto as Exh. 19) (holding that because sub-subcontractor entitled to interest, attorneys' fees and costs under its rental agreements with Tessa, it may recover those fees from defendants prime contractor and surety).

## IV. CONCLUSION

For the reasons discussed above, Plaintiff Precision Cranes, Inc. respectfully requests this Court to grant it's motion for partial summary judgment. An order should

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 18 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

issue directing the Sureties to provide payment of Precision's claims, including attorney's fees.

DATED this ___ day of October, 2019, at Anchorage, Alaska.

Woelber & Cole, LLC
Attorneys for Precision Cranes, Inc.

By: s/ Brent R. Cole
Brent R. Cole
AK State Bar No. 8606074
Law Office of Brent R. Cole, P.C.
821 N Street, Suite 208
Anchorage, AK 99501
Tel: 907-277-8001
Fax: 907-277-8002
brent@akcolelaw.com

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 19 of 20

**CERTIFICATE OF SERVICE**

This is to certify that on this ___ day of October, 2019, a copy of the foregoing document was served electronically on the following party:

Travelers Casualty and Surety Co. of America and
Liberty Mutual Insurance Company c/o
Michael C. Geraghty, ABA 7811097
Oles Morrison Rinker & Baker LLP
601 West Fifth Avenue, Suite 900
Anchorage, Alaska 99501-2154
Ph: (907) 258-0106
Fax: (907) 258-5519
Email: Geraghty@OLES.com

Travelers Casualty and Surety Co. of America and
Liberty Mutual Insurance Company c/o
J. Craig Rusk
Oles Morrison Rinker & Baker LLP
701 Pike Street, Suite 700
Seattle, Washington 98101
Ph: (206) 623-3427
Fax: (206) 682-6234
Email: Rusk@OLES.com

Tester Drilling Services, Inc.
David M. Freeman, ABA 7808066
Holmes Weddle & Barcott, P.C.
701 West 8th Avenue, Suite 700
Anchorage, Alaska 99501
Ph: (907) 274-0666
Fax: (907) 277-4657
Email: dfreeman@hwb-law.com

By_______s/ Brent R. Cole______________

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Memorandum in Support of Plaintiff's Rule 56 Motion for Summary Judgment
*Precision Cranes, Inc. v. Tester Drilling Services, et. al.*
Page 20 of 20