WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Brent R. Cole
Woelber & Cole, LLC
821 N Street, Suite 208
Anchorage, AK 99501
(907) 277-8001
brent@woelbercole.com
info@woelbercole.com

Attorneys for Precision Cranes, Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA for the use and benefit of PRECISION CRANES, INC., an Alaska corporation,

Plaintiff,

vs.

TESTER DRILLING SERVICES, INC., an Alaska corporation; TRAVELERS CASUALTY AND SURETY CO. OF AMERICA, a Connecticut corporation; and LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation (Bond #106721293)

Defendants.

Case No.: 4:18-cv-00019-TMB

**PLAINTIFF'S REPLY TO DEFENDANTS TRAVELER'S AND LIBERTY'S OPPOSITION TO PLAINTIFF'S RULE 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Precision Cranes, Inc. ("Precision") is entitled to summary judgment in in its favor and against defendant Miller Act sureties Travelers Casualty and Surety Co. of America and Liberty Mutual Insurance Company (collectively "Sureties") on its Miller Act

*Plaintiff's Reply to Defendant Traveler's and Liberty's Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 1 of 20
Case 4:18-cv-00019-TMB Document 39 Filed 11/15/19 Page 1 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

claim for unpaid amounts due on its contract with Tester Drilling Services, Inc. ("TDSI") to supply cranes and crane operators for the federal Clear Long Range Discrimination Radar Project ("the Project").

## II. ARGUMENT

In an attempt to defeat summary judgment, defendant Sureties obfuscate the facts and the law by detailing the irrelevant failings of TDSI and citing to distinguishable cases decided outside the Ninth Circuit. Indeed, Sureties do not cite to a single case within the Ninth Circuit to support their arguments. The material facts and the law governing this case, however, are undisputed and straightforward. Unit-ASRC Construction, LLC ("UNIT") executed a federal contract to construct a mission control facility at the Clear Air Force Station. The Miller Act required UNIT to furnish a payment bond "'for the protection of all persons supplying labor and material in carrying out the work provided for in the contract.'" *Technica LLC v. Carolina Casualty Ins. Co.*, 749 F.3d 1149, 1152 (9th Cir. 2014) (quoting 40 U.S.C. § 3133(b)(2)). UNIT furnished a payment bond in the amount of $112,949,720 executed by the Sureties.[1] Prime Contractor Unit contracted with subcontractor TDSI to provide various goods and services in support of drilling eight wells on the Project.[2] TDSI, in turn, contracted with sub-subcontractor Precision to "[p]rovide crane services to support the installation of . . . Water Wells. . . Work includes operating crane to provide grab services. . . . Operate second crane to provide support services to

[1] *See* Plaintiff's Exh. 1, Payment Bond [Doc. 35-1].
[2] *See* Plaintiff's Exh. 2, UNIT-TDSI Contract [Doc. 35-2].

*Plaintiff's Reply to Defendant Traveler's and Liberty's Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 2 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

support casing and well installation."[3] It is undisputed that Precision supplied the cranes and crane operators for lifting services on the Project.[4] However, Precision did not specify, select or approve the equipment used by TDSI, including the Grab, power packs, rotators, oscillators or any other drilling equipment.[5] On July 28, 2017, Precision mobilized cranes and equipment to the Project site.[6] In his affidavit, Fred Kuykendall, Sr., co-owner of Precision, testified as follows:

> 20. During the period that Precision rented cranes to TDSI, we operated the cranes: i) to pick and move a variety of equipment (i.e. rotators, oscillators, etc.); ii) to raise and lower and to operate the jaws of the Grab; iii) to pick, move, and set sections of temporary casing; iv) to perform miscellaneous lifts/moves for TDSI and other contractors on the Project; v) to lower a man-basket inside one well casing for casing repairs; and vi) ultimately to extract casing from some of the wellbores.[7]

Precision's cranes remained on the Project site until mid-October 2017.[8] Mr. Kuykendall, Sr. testified that Precision submitted invoices, a copy of which are attached to Mr. Kuykendall's affidavit, to TDSI for payment of equipment rental and labor totaling $577,312.31 which amount remains unpaid.[9]

---

[3] *See* Plaintiff's Exh. 8, Precision Contract, page 1, [Doc. 35-8]; Affidavit of Fred Kuykendall, Sr. at ¶ 17 ("Based on the quotes provided and the discussions between TDSI and Precision, TDSI provided, and I executed on behalf of Precision, "Subcontract TDSI-165302" for lifting services for the Clear radar project.") [Doc. 35-4]

[4] *See* Affidavit of Fred Kuykendall, Sr. at ¶ 5 ("Although Precision's cranes are often used to accomplish a variety of tasks, Precision's services and business offerings are limited to crane rental, operators for the cranes, and related services such as providing lifting plans.")

[5] *Id.* at ¶ 7.

[6] *Id.* at ¶18.

[7] *Id.* at ¶ 20.

[8] *Id.* at ¶ 21.

[9] *Id.* at ¶ 22; Plaintiff's Exh. 17 [Doc. 35-17].

*Plaintiff's Reply to Defendant Traveler's and Liberty's*
*Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 3 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

The Miller Act explicitly extends to sub-subcontractors, like Precision, the right to file and prosecute an action against a prime contractor's payment bond. *Technica LLC v. Carolina Casualty Ins. Co.*, 749 F.3d at 1152 (citing 40 U.S.C. § 3133(b)(1)). "The Miller Act is highly remedial in nature, and 'is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects.'" *Id.* (quoting *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957)). Accordingly, to prevail on a Miller Act claim, a sub-subcontractor such as Precision need only establish four elements: (1) the materials and labor were supplied in prosecution of the work provided for in the contract; (2) it has not been paid; (3) it had a good faith believe that the materials and labor were intended for the specified work; and (4) the jurisdictional requisites were met. *Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 761 (9th Cir. 1984); *Hawaiian Rock Products Corp. v. A.E. Lopez Enterprises, LTD*, 74 F.3d 972, 975 (9th Cir. 1996) (same). The Sureties do not appear to dispute that Precision has established these four elements. Rather, the crux of the Sureties' argument is that an issue of fact regarding the *amount* that Precision is entitled to recover precludes summary judgment. For the reasons discussed below, the Sureties' argument is without merit.

**A. <u>As A Matter of Law, Precision is Entitled to Recover from the Sureties the Sums Due Under the TDSI-Precision Contract</u>.**

The Miller Act provides that "[e]very person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished. . . may

*Plaintiff's Reply to Defendant Traveler's and Liberty's Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 4 of 20

bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought. . . ." 40 U.S.C. 3133(b)(1). In Miller Act cases, the Ninth Circuit looks to the subcontract terms to determine the measure of recovery. *Taylor Construction Inc. v. ABT Service Corp. Inc.*, 163 F.3d 1119, 1112 (9th Cir. 1998). In *Taylor Construction*, the Ninth Circuit explained as follows:

> Taylor is indisputably entitled to bring suit to recover under the payment bond because Taylor 'furnished labor or material in the prosecution of the work.' 40 U.S.C. §270b(a). What is disputed here is not who can recover but rather what Taylor Construction can recover. . . [A] provider of labor or materials is entitled to all sums justly due, meaning that the provider is entitled to be paid in full under the subcontract. . . . Long-standing precedent confirms that 'sums justly due' means the sums due the party under the bonded contract. . . . The Ninth Circuit has consistently followed that method and used the underlying bonded subcontract as the measure of recovery in Miller Act cases.

*Id.* at 1112 (citing *Colvin v. United States ex rel. Magini Leasing & Contracting*, 549 F.2d 1338, 1342 (9th Cir. 1977) (basing recovery on "the terms of the contract"); *United States ex rel. A.V. DeBlasio Construction Inc. v. Mountain States Construction Co.*, 588 F.2d 259, 262-63 (9th Cir. 1978) (approving award of damages because it was in accordance with the provisions of the contract)).

The Ninth Circuit in *Taylor Construction* affirmed the district court's summary judgment against the surety and order for the surety to pay the entire amount due under the contract "because the Miller Act clearly requires a surety to pay the entire amount due under the contract when the prime contractor defaults." *Id.* at 1120. In reaching its decision, the court held that profits are recoverable under the Miller Act. *Id.* at 1123 (citing *Woodington Elec. Co. v. United Pac. Ins. Co.*, 545 F.2d 1381, 1383 (4th Cir. 1976) (stating

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

*Plaintiff's Reply to Defendant Traveler's and Liberty's*
*Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 5 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

that where the subcontract includes a profit sharing provision, 'a surety is liable for the subcontract price, unless it was fixed by collusion, fraud, or overreaching. Consequently, the surety is obligated to pay the compensation to which the parties have agreed, although this amount exceeds the cost of labor, materials, and overhead."); *United States ex re. Reichenback v. Montgomery*, 155 F.Supp. 384, 386 (E.D. Pa. 1957), *aff'd,* 253 F.2d 427 (3rd Cir. 1958) ("The surety's contention that it is entitled to judgment because the subcontract . . . included subcontractors' profit misconceives both the language and the purpose of the Miller Act . . . . The subcontract fixed the fair, reasonable value of the labor and material furnished . . . and to the recovery of that value the subcontractors are entitled.")).

Pursuant to the terms of the contract, TDSI agreed to compensate Precision as follows: "Unit rates per Precision proposal of 1/24/17 & 7/18/17, not to exceed $675,000.00".[10] The Precision proposal of January 25, 2017 sets forth the monthly and weekly rental rates for a variety of cranes and other equipment, mobilization and demobilization costs, and "man hours charged at $100 per man, per hour. Overtime charged at $120 per man, per hour".[11] The Precision proposal of July 18, 2017 sets the monthly rental rate for the Lattice Crane, as well as mobilization and demobilization costs.[12] TDSI agreed to the rental rates, mobilization and demobilization costs and labor rates set forth in the proposals.

---

[10] Plaintiff's Exh. 8, Precision Contract, page 1 [Doc. 35-8].
[11] Affidavit of Kuykendall, Sr. at ¶ 8 [Doc. 35-4]; Plaintiff's Exh. 3 [Doc. 35-3].
[12] Affidavit of Kuykendall, Sr. at ¶ 13 [Doc. 35-4]; Plaintiff's Exh. 7, pg. 2 [Doc. 35-7].

*Plaintiff's Reply to Defendant Traveler's and Liberty's Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 6 of 20

In his Affidavit, Mr. Kuykendall explained that Precision's operators, mechanics and assistants are hired out of the union hall, and their salary and benefits are negotiated through the union contract.[13] Precision charges "a flat hourly rate for employee wages and benefits taking into consideration administrative costs and profit."[14] Mr. Kuykendall also testified that once work on the Project commenced, Precision supplied "certified payrolls" supporting the personnel hours expended on the Project by Precision's crane operators, riggers, and other personnel.[15] Mr. Kuykendall further testified that Precision submitted invoice nos. 3343, 3349, 3361 and 3366 totaling $577,312.31 to TDSI for crane and equipment rental, mobilization and demobilization costs and labor in accord with the TDSI-Precision contract terms.[16] Mr. Kuykendall testified that the $577,312.31 owed Precision by TDSI is unpaid.[17] And contrary to the Sureties argument at pages 20-21 of their Opposition that Precision has failed to meet its initial burden of establishing the absence of a genuine issue of fact, the sworn affidavit of Mr. Kuykendall and attached invoices constitute admissible evidence sufficient to demonstrate an absence of disputed facts regarding the sum due under the TDSI-Precision contract. Fed. R. Civ. P. 56(1)(A). *See also Hawaiian Rock Products Corp. v. A.E. Lopez Enterprises, LTD.*, 74 F.3d 972, 975 (9th Cir. 1996) ( holding that plaintiff presented a prima facie case for payment under the Miller Act where the record included invoices and delivery tickets that indicated that plaintiff

---

[13] Affidavit of Kuykendall, Sr. at ¶ 6 [Doc. 35-4].
[14] *Id.*
[15] *Id.* at ¶ 15; Doc. 36-1 at pp. 15-38 (Certified Payroll).
[16] Affidavit of Kuykendall, Sr ¶ 15; Exh. 17 [Doc. 35-17].
[17] Affidavit of Kuykendall, Sr. at ¶ 22.

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

*Plaintiff's Reply to Defendant Traveler's and Liberty's Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 7 of 20

supplied materials for use in the Air Force project); *Patton Contractors, Inc. v. Innovative Performance Contracting, Inc.*, Civil Action No. 3:13-CV-2198-D (N.D. Tex. 2014)[18] (granting summary judgment in favor of plaintiff on its Miller Act claim, court stated that plaintiff introduced evidence that it performed all the labor and supplied all the materials necessary to complete the work required of it under the contract, including the declaration of plaintiff's senior project manager, who averred that plaintiff performed all work under the subcontract agreement, and the invoices sent for the unpaid work it performed).[19]

Sureties have proffered no admissible evidence whatsoever to dispute that the sums Precision claims are due are not in accord with the TDSI-Precision contract terms. Sureties merely argue that the "man hours" reflected in the invoices exceeds the "hours worked" shown in the TDSI Daily Reports. *See* Sureties' Opposition at pg. 27. But the TDSI Daily Reports are not admissible evidence and the accuracy of the Daily Reports has not been verified by sworn testimony of a person with personal knowledge. Fed. R. Civ. P. 56(c)(4). Similar to this case, in *Patton Contractors, Inc. v. Innovative Performance Contracting, Inc.*, Civil Action No. 3:13-CV-2198-D (N.D. Tex. 2014), the sureties argued that Patton, a sub-subcontractor, was not entitled to summary judgment on its Miller Act claim because there was a genuine issue of material fact regarding whether it performed all of the work

---

[18] Attached hereto as Exhibit 20 for the Court's convenience. [Doc. 35-20]

[19] The cases cited by Sureties do not lend support for their position. In *Chasney and Co., Inc. v. Hartford Accident & Indem. Co.*, 168 F.Supp.3d 824, 840 (D.Md. 2016) the court merely noted that "Chasney will bear the burden of proof at a trial on its Miller Act claim. . . and Chasney must therefore prove its damages to the requisite degree of reasonable certainty. . . ." *USA Machinery Corp. v. CSC, Ltd.*, 184 F.3d 257 (3rd Cir. 1999) does not involve a Miller Act claim.

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

*Plaintiff's Reply to Defendant Traveler's and Liberty's*
*Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 8 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

alleged, citing in support the declaration of the prime contractor's operation manager who stated that Patton had billed for work it did not actually perform. For example, the affidavit stated that a Patton employee billed for full days or work performed on days when he was not physically at the job site. The district court held that the affidavit was insufficient to create a genuine fact issue because the prime contractor's operation manager's affidavit was not based on personal knowledge. "Therefore, Patton's otherwise undisputed evidence in the form of a sworn affidavit and invoices established beyond peradventure that Patton performed the work it alleges." *Id.* Likewise, the affidavits of Fred Strand, the Sureties' expert CPA, and UNIT Company President Michael Fall are not based upon personal knowledge of the "man hours" or "hours worked" by Precision's personnel on the Project. Rather, Strand and Fall merely compared the TDSI Daily Reports with Precision's certified payroll and invoices to conclude that TDSI's Daily Reports show fewer "hours worked".[20] *See* Sureties' Opposition at pg. 27. The Affidavits of Fred Strand and Michael Fall are insufficient to defeat summary judgment. Relying of Mr. Farr's opinion regarding rental values, the Sureties also grumble that the rental rates charged by Precision are

---

[20] Mr. Fall states, "Based on a review of daily reports, it appears as if Precision (1) billed for complete days when its crews arrived, even if no work was performed or the crews were unable to access the worksite, (2) billed for more time than its crews worked, (3) billed for complete days during a mandatory shutdown, and (4) billed for complete days while waiting for recovery plans to be approved." Affidavit of Fall at ¶ 24 [Doc. 37 at pg. 8]. Mr. Fall's statements are not based upon personal knowledge. Additionally, Precision has again conducted an audit comparing its certified payroll with invoices and timecards and determined it is in error no more than $1,485. *See* Affidavit of Fred Kuykendall, Sr. in Support of Reply to Opposition to Motion for Summary Judgment at ¶¶ 2-3. Additionally, as his affidavit avers, daily reports do not reflect standby time for his employees. *Id.*, at ¶ 4.

*Plaintiff's Reply to Defendant Traveler's and Liberty's*
*Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 9 of 20

unreasonable. But those are the rates to which Precision and TDSI contractually agreed and, therefore, Precision is entitled to recover those sums from the Sureties[21].

**B. The Miller Act Does Not Require that a Sub-Subcontractor Add Value to the Project in Order to Recover, and the Ninth Circuit Forbids the Sureties' Recoupment Defense.**

Contrary to the Sureties' argument, the measure of recovery under the Miller Act is not limited to the reasonable value of the labor and materials to the prime contractor. *See* Sureties' Opposition at pp. 22-24. Again, complaining that TDSI's failures caused a significant delay to the Project and required the prime-contractor UNIT to secure a replacement drilling contractor to provide wells on the Project, the Sureties argue that because Precision added no value to the Project, Precision is not entitled to payment. The Sureties' argument is without merit and has been expressly rejected by the Ninth Circuit.

The Ninth Circuit has held as follows:

> Establishment of a subcontractor's claim for labor or materials, in an action brought under the Miller Act, is not dependent upon a showing that the labor or materials furnished were of benefit to the prime contractor. All that is required is proof that the labor or material was furnished in the prosecution of the work provided for in the prime contract, and that the subcontractor has not been paid therefor. *See* §2(a), 49 Stat. 794, 40 U.S.C. § 270(a).
>
> It is therefore immaterial whether Boespflug benefited by the extra work for which Warren claims compensation.

*Warren Painting Co., Inc. v. J.C. Boespflug Construction Co.*, 325 F.2d 54, 62 (9th Cir. 1963). *See also Chemetron Corp. v. George A. Fuller Co.*, 250 F.Supp.649, 660 (D. Mont. 1965) ("It is well settled that a supplier suing on a Miller Act bond does not have to prove

[21] See Kuykendall Reply Affidavit at ¶ 4.

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

*Plaintiff's Reply to Defendant Traveler's and Liberty's Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 10 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

that the materials supplied were actually incorporated into the contract. . . . Rental charges for equipment furnished to perform work on the contract are recoverable under the bond.") (citing *Warren Painting Co., Inc. v. J.C. Boespflug Construction Co.*, 325 F.2d at 62)). To recover on its Miller Act claim, Precision is not required to show that the equipment and labor furnished on the Project benefited UNIT. It is therefore immaterial that UNIT had to hire a replacement drilling contractor to complete the wells on the Project. And since it is undisputed that the equipment and labor supplied by Precision was in connection with the bonded contract, Precision is entitled to recover from the Sureties the unpaid amount due on its contract with TDSI.

The Sureties also argue that "not only did TDSI and Precision fail to add any value whatsoever to the Project, they ultimately added negative value, as their poor work resulted in significant delays and rework. . . . Precision is not entitled to recover under the Miller Act." *See* Sureties' Opposition at pg. 24. The Sureties' argument is one for the defense of recoupment, a reduction by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction. *Thyssenkrupp Safway, Inc. v. Tessa Structures, LLC,* Case No. 1:10cv 512 (E.D. Va. 2011).[22] As noted by the *Tessa Structures* district court, there is a split among the circuit courts as to the availability to a prime contractor of a recoupment defense against a plaintiff sub-subcontractor when the prime contractor is not in privity with the sub-subcontract. *Id.* The Ninth Circuit forbids such a recoupment defense. *Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750

[22] Plaintiff's Exh. 20 [Doc. 35-20]

*Plaintiff's Reply to Defendant Traveler's and Liberty's*
*Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 11 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

F.2d 759, 762 (9th Cir. 1984). In *Martin Steel Constructors*, the Ninth Circuit held:

> We find that a set-off defense is not available in a Miller Act claim in the absence of privity. The Act was created for protection of those in Martin's position, and allowing a set-off defense by a general contractor not in privity with Martin would unduly burden the enforcement of the rights created by the Act. Furthermore, although Harvis may incur losses as a consequence of Martin's alleged defective deliveries, Harvis' complaint, if any, would seem to be against its subcontractor Avanti. Indeed, Harvis was in the best position to protect itself against Avanti's potential bankruptcy.
>
> [T]he prime contractors could easily have secured themselves against loss by requiring the subcontractor to give security by bond or otherwise for the payment of those contracted directly with the subcontractor. After all, the prime contractor selects his own subcontractors and it seems not unjustly harsh that he should be holden for their laxities.

*Id.* at 762-763 (citing *Glassell-Taylor Co. v. Magnolia Petroleum Co.*, 153 F.2d 527, 530-31 (5th Cir. 1946)).

*Bartec Industries, Inc. v. United Pacific Company*, 976 F.2d 1274 (9th Cir. 1992) is also instructive. In that case, Kauai Builders contracted with the U.S. Navy to construct a hangar and office building. Kauai's surety, United, issued a payment bond to Kauai as principal guaranteeing payment to suppliers for any materials furnished for use in construction of the project. Kauai contracted with Simpson for erecting the structural steel. Simpson contracted with Bartec to fabricate and supply the steel. However, some of the Bartec steel was misfabricated, incorrectly marked, or unpainted, and some was lost at sea during transport. *Id.* at 1275-1276. The parties did not dispute that Bartec met the four elements for establishing a Miller Act claim.

> However, United argues that Kauai (and in turn itself, as Kauai's surety) are entitled to a set-off for Simpson's cost to remedy the misfabricated and incorrectly painted steel. United asserts that, if this set-off were provided,

*Plaintiff's Reply to Defendant Traveler's and Liberty's Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 12 of 20

> Bartec would be entitled to no damages at all since its unpaid contract balance would be exceeded by those costs. Unfortunately for United, the set-off defense is allowed only where the material supplier is in a direct contractual relationship with the counter-claiming party. *Avanti Constructors*, 750 F.2d at 762 (citing cases). Here, Bartec agreed to provide steel to Simpson in a contract to which Kauai was not a party. Thus, United as Kauai's surety is not entitled to a reduction in its liability to Bartec on the grounds that Simpson had to remediate certain defective steel beams.

*Id.* at 1278.

The cases cited by the Sureties are decided outside the Ninth Circuit and are inapposite. The Sureties primarily rely on *Rocky Mountain Tool & Machine Co. v. Tecon Corp.*, 371 F.2d 589 (10th Cir. 1966). But this Tenth Circuit decision does not reflect the law in this jurisdiction. In *Rocky Mountain Tool & Machine Co.*, the Tenth Circuit allowed the prime contractor an off-set defense stating, "the relation of cost to value was negative by evidence of the sub-contractor's failure to meet progress and quality requirements. . . . Rocky Mountain's total contract price was $825,000 and Tecon's cost after take-over exceeded $900,000." *Id.* at 594. And in *United Structures of America, Inc. v. G.R.G. Engineering*, 91 F.3d 996, 996-997 (1st Cir. 1993), also cited by the Sureties, the First Circuit expressly stated:

> The district court, relying upon a Ninth Circuit Case, *United States ex rel. Martin Steel Constructors v. Avanti Steel Constructors*, 750 F.2d 759 (9th Cir. 1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985), held that where the supplier has a contract with a subcontractor but not with the general contractor, the Miller Act forbids the general contractor from taking such 'offsetting' deductions. We disagree with the Ninth Circuit.

The remaining cases relied upon by the Sureties are equally unhelpful. *Window Specialists, Inc. v. Forney Enterprises, Inc.*, 106 F.Supp.3d 64 (D.D.C. 2015) and *Acme Process*

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

*Plaintiff's Reply to Defendant Traveler's and Liberty's Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 13 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

*Equipment v. United States*, 347 F.2d 509 (Fed. Cir. 1965) are actions for breach of contract and do not even involve a Miller Act claim.

Because UNIT is not in privity with Precision, UNIT and, in turn, the Sureties, are not entitled to a set-off for UNIT's additional costs allegedly incurred because of Precision's alleged deficiencies. In short, Sureties are not entitled to a reduction in their liability to Precision on the grounds that UNIT had to rework the wells.

### C. **Contract Terms That Are Inconsistent with the Rights and Obligations Created Under the Miller Act are Unenforceable.**

The Ninth Circuit has held that "[w]here subcontract terms effect the timing of recovery or the right of recovery under the Miller Act, enforcement of such terms to preclude Miller Act liability contradict the express terms of the Miller Act." *Walton Tech., Inc. v. Westar Engineering, Inc.*, 290 F.3d 1199, 1207 (9th Cir. 2002). Thus, there are circumstances in which a surety is not entitled to use the principal's contract defenses to defend against liability under the Miller Act. For instance, in *Walton Tech.*, the subcontract contained a clause requiring the contractor to pay the subcontractor only "when and if paid by the Navy." *Walton Tech.*, 290 F.3d at 1203. Finding that the enforcement of the "pay if paid" clause contradicted the express terms of the Miller Act, the Ninth Circuit reversed the district court's grant of summary judgment in favor of the surety. *Id.* at 1208-1209. *See also Kitchens To Go v. John C. Grimberg Co., Inc.*, 283 F.Supp.3d 476 (E.D.Va. 2017) ("And importantly, as well-settled authority makes clear, the Miller Act trumps conflicting suretyship principles such that a surety can only enforce contract terms to limit its Miller

*Plaintiff's Reply to Defendant Traveler's and Liberty's Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 14 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

Act liability if those terms are consistent with the Act.") (citing *Walton Tech.*, 290 F.3d at 1206-1208)); *Patton Contractors, Inc. v. Innovative Performance Contracting, Inc.*, Civil Action NO. 3:13-CV-2198-D (N.D. Tex. 2014)[23] (courts are "'reluctant to incorporate into the subcontract provisions of the prime contract which adversely affect the Miller Act rights of the subcontractor.'") (quoting *Delta Metals, Inc. v. R.M. Wells Co., Inc.*, 497 F.Supp. 541, 544 (S.D. Ga. 1980)). In *Kitchens To Go,* the court explained that "although in a Miller Act case courts must look to the subcontract to determine the scope of the subcontractor's work and form of payment for that work – e.g., by fixed price, time and materials, profits or other means – the subcontract cannot eliminate the right to payment altogether, or delay it, unless the subcontract does so in a manner consistent with the terms of the Miller Act." *Kitchens To Go*, 283 F.Supp. at 485. These principles defeat the Sureties' argument that it is only liable, under the terms of the UNIT-TDSI contract, for the "reasonable value" of Precision's work. *See* Sureties' Opposition at pp. 24-26.

The UNIT-TDSI contract provides that if the contractor elects to terminate the subcontract for convenience, "the CONTRACTOR shall be liable to the SUBCONTRACTOR solely for the reasonable value of work performed by the SUBCONTRACTOR prior to the SUBCONTRACT termination, including reasonable overhead and profit, less prior payments made. SUBCONTRACTOR shall not be entitled to prospective profits on unperformed work."[24] The TDSI-Precision contract provides:

Section 1: Contract Documents. The term "Prime Contract" as used herein

[23] Plaintiff's Exh. 20. [Doc. 35-20]
[24] Defendants' Exh. 2 [Doc. 37-2, Page 7].

*Plaintiff's Reply to Defendant Traveler's and Liberty's*
*Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 15 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

> refers to all the General and Special Conditions, Drawings, Specifications, Addenda, Amendments, Modifications and all other documents forming or by reference made a part of the contract between the Contractor and Owner. All of the aforesaid shall be considered a part of this Subcontract by reference thereto and the Subcontractor agrees to be bound to the Contractor and Owner by the terms and provisions thereof, so far as they apply to the Work hereinafter described.[25]

Sureties argue that the UNIT-TDSI termination for convenience clause is incorporated by reference into the TDSI-Precision contract. Sureties then argue that UNIT terminated the TDSI contract for convenience and because neither TDSI nor Precision performed work of any "reasonable value" to UNIT, UNIT, and thus its Sureties, are not liable to Precision on Precision's Miller Act claim. An argument similar to Sureties' was rejected by the district court in *Patton Contractors, Inc. v. Innovative Performance Contracting, Inc.*, Civil Action NO. 3:13-CV-2198-D (N.D. Tex. 2014).[26]

In *Patton,* the Sureties argued that sub-subcontractor Patton agreed to be bound by the Siemens-IPC contract because the Patton-IPC contract incorporated that contract by reference. The sureties contended that the fixed-price pricing structure in the Siemens-IPC contract, which imposed a cap of $3.8 million, conflicted with the per-unit Davis-Bacon wages pricing structure found in the Patton-IPC contract. The Patton-IPC contract contained a flow-down provision providing that Patton agreed to bound to IPC by the terms and conditions of the contract between IPC and Siemens. The sureties argued that the general incorporation by reference bound Patton to the fixed-payment pricing structure of

[25] Plaintiff's Exh. 8 at pg. 1 [Doc. 35-8].
[26] Plaintiff's Exh. 20. [Doc. 35-20].

the Siemens-IPC contract, despite the fact that Patton was not a party to that contract. Rejecting the sureties' argument, the district court explained:

> Although incorporation by reference is a valid means of including the terms of one agreement in another, courts have held that, in the context of a Miller Act claim, 'a general incorporation by reference, of the terms of the principal contract, refers only to the quality and manner of the subcontractor's work, not the rights and remedies he may have against the prime contract.' [citations omitted] Absent a specific reference to provisions in the prime contract governing methods of calculating payments, courts have declined to hold that the prime contract's payment provisions apply to subcontractor's rights under the Miller Act. *See Edward E. Morgan Co. v. U.S. for Use & Benefit of Pelphrey,* 230 F.2d 896, 903 (5th Cir. 1956) (holding that general incorporation clause related only to manner of performance of subcontractor's work, not to manner of computing amount of subcontractor's payment). . . .
>
> The flow-down provision of the Patton-IPC Contract neither specifically incorporates the methods of payment in the Siemens-IPC Contract nor mentions any specific provision of the Siemens-IPC Contract. Therefore, the court holds that this clause refers only to the manner of performing Patton's work, not to the method by which IPC will pay Patton. Accordingly, the court holds that the fixed-price structure under the Siemens-IPC Contract does not preclude Patton from recovering from the Sureties under the Miller Act.

*Id.*

In the instant case, Sureties' argument is likewise fatally flawed. First, there is no privity between UNIT and Precision. UNIT's termination of TDSI for convenience does not modify the payment terms set forth in the TDSI-Precision contract. The TDSI-Precision contract does not specifically incorporate or mention the termination for convenience clause. Pursuant to the terms of the TDSI-Precision contract, TDSI was required to compensate Precision according to the terms of the TDSI-Precision contract whether or not TDSI was terminated by UNIT for convenience. Second, the UNIT-TDSI

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

*Plaintiff's Reply to Defendant Traveler's and Liberty's*
*Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 17 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

termination for convenience clause does not "apply to the Work" described in the TDSI-Precision contract and, therefore, it is not incorporated by reference. The flow-down provision refers only to the manner in which Precision will perform its work, not to the method TDSI will pay Precision. And third, the "reasonable value" provision conflicts with the Miller Act and, therefore, it is not enforceable against Precision even if applicable. As discussed above, "[e]stablishment of a subcontractor's claim for labor or materials, in an action brought under the Miller Act, is not dependent upon a showing that the labor or materials furnished were of benefit to the prime contractor. All that is required is proof that the labor or material was furnished in the prosecution of the work provided for in the prime contract, and that the subcontractor has not been paid therefor." *Warren Painting Co., Inc. v. J.C. Boespflug Construction Co.*, 325 F.2d 54, 62 (9th Cir. 1963). Further, a set-off defense is not available in a Miller Act claim in the absence of privity. *Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 762 (9th Cir. 1984).

The form of Precision's payment for its work is determined by the compensation provision set forth in the TDSI-Precision contract. *Taylor Construction Inc. v. ABT Service Corp. Inc.*, 163 F.3d 1119, 1112 (9th Cir. 1998). Sureties' argument that the flow-down provision set forth in the TDSI-Precision clause incorporates by reference the termination for convenience clause set forth in the UNIT-TDSI contract and applies to bar Precision's recovery under the Miller Act is an attempt to "rewrite or amend the statute and therefore fails." *See Kitchens To Go*, 283 F.Supp.3d at 482.

*Plaintiff's Reply to Defendant Traveler's and Liberty's*
*Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 18 of 20

## III. CONCLUSION

Precision has established, through admissible evidence, a prima facie claim for recovery under the Miller Act. The affidavits of Fall and Strand fail to create an issue of material fact sufficient to defeat summary judgment. For these reasons and those discussed above, Plaintiff Precision respectfully requests this Court to grant its Motion for Partial Summary Judgment in its favor and against Defendant Miller Act Sureties on its Miller Act claim for unpaid amounts due on its contract with TDSI to supply cranes and crane operators for the federal Project, and to order Sureties to pay Precision $575,827.31.

DATED this ___ day of November, 2019, at Anchorage, Alaska.

WOELBER & COLE, LLC
Attorneys for Defendant

By: s/ Brent R. Cole
Brent R. Cole
AK State Bar No. 8606074

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

*Plaintiff's Reply to Defendant Traveler's and Liberty's Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 19 of 20

WOELBER & COLE, LLC
821 N Street, Suite 208
Anchorage, Alaska 99501
(907) 277-8001 Phone
(907) 277-8002 Facsimile

**CERTIFICATE OF SERVICE**

This is to certify that on this ___ day of November, 2019, a copy of the foregoing document was served electronically on the following party:

Travelers Casualty and Surety Co. of America and
Liberty Mutual Insurance Company c/o
Michael C. Geraghty, ABA 7811097
Oles Morrison Rinker & Baker LLP
601 West Fifth Avenue, Suite 900
Anchorage, Alaska 99501-2154
Ph: (907) 258-0106
Fax: (907) 258-5519
Email: Geraghty@OLES.com

Travelers Casualty and Surety Co. of America and
Liberty Mutual Insurance Company c/o
J. Craig Rusk
Oles Morrison Rinker & Baker LLP
701 Pike Street, Suite 700
Seattle, Washington 98101
Ph: (206) 623-3427
Fax: (206) 682-6234
Email: Rusk@OLES.com

Tester Drilling Services, Inc.
David M. Freeman, ABA 7808066
Holmes Weddle & Barcott, P.C.
701 West 8th Avenue, Suite 700
Anchorage, Alaska 99501
Ph: (907) 274-0666
Fax: (907) 277-4657
Email: dfreeman@hwb-law.com

By_______s/ Brent R. Cole______________

*Plaintiff's Reply to Defendant Traveler's and Liberty's Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment*
*Precision Cranes, Inc. v. Tester Drilling Services, Inc.*, 4:18-cv-00019-TMB
Page 20 of 20