
| | 33650 6th Avenue So., Suite 200 | Paul Harmon |
|---|---|---|
| | Federal Way, WA 98003 | Claim Counsel |
| | Toll Free : (800) 842-8496 | Bond & Specialty Insurance Claim |
| | | Phone: (253) 943-5825 |
| | | Fax: (866) 842-9201 |
| | | Email: pharmon@travelers.com |

March 12, 2018

Via email: brent@akcolelaw.com

Brent R. Cole
Woelber & Cole, LLC
821 N Street, Suite 208
Anchorage, AK 99501

Re:    Surety:    Travelers Casualty and Surety Company of America
       File No.    091-SC-T1800817-NR
       Bond No.:    081-SB-106721293

       Surety:    Liberty Mutual Insurance Company
       File No.:    023038282.2
       Bond No.:    023038282

       Principal:    Unit-ASRC Construction, LLC
       Project:    LRDR Construction Pkg 1-Site Infrastructure, MCF & Substation, Clear AFS Contract W911KB-17-C-0002
       Obligee:    U.S. Army Engineer District, Alaska
       Claimant:    Precision Cranes, Inc.

Dear Mr. Cole:

Travelers Casualty and Surety Company of America ("Travelers"), on behalf of itself and Liberty Mutual Insurance Company ("Liberty"), conducted a thorough investigation and determined that the claim by your client Precision Cranes, Inc. ("Precision") on the payment bond referenced above is not covered by the bond referenced above. Precision's claim is respectfully denied because, based on the information Travelers and Liberty have received to date, it appears that the labor and materials furnished by Precision did not advance construction of the project covered by the bond, and in fact may have caused Unit-ASRC Construction, LLC ("Unit-ASRC") to incur damages.

Precision indicates on its claim form that it was a subcontractor to Tester Drilling Services, Inc. ("Tester"). Tester was a subcontractor to Unit-ASRC. Precision alleges that it is owed $594,411.17 plus interest for crane rental services. It appears that Precision provided two cranes, a service truck and crew members to operate the crane. In support of its claim, Precision has provided (1) correspondence related to the project; (2) specificiations for the work; (3) invoices and price quotes; and (4) a copy of its subcontract with Tester.

In response to Precision's claim, Unit-ASRC asserts that Tester failed to advance the work. Unit-ASRC sent Tester several cure notices, and notices that Unit-ASRC had incurred damages due to Tester's failure to perform. Ultimately, Unit-ASRC terminated Tester and prosecuted Tester's scope of work by other means, thereby incurring costs over and above the funds available under Tester's subcontract. While Precision is not Tester, the crane rental services that Precision provided to Tester are closely bound with Tester's scope of work on the project, and Tester's failed performance appears to have been caused at least in part by the defective performance of Precision.

The Miller Act requires that, for any contract of more than $100,000 for the construction of a project for the Federal Government, the contractor must provide a payment bond "...for the protection of all persons supplying labor and material in carrying out the work provided for in the contract...." 40 U.S.C. § 3131(b)(2).

*********************************************************************************
If possible, please send future communications and documents concerning this claim via email to pharmon@travelers.com
Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

**Travelers**

March 12, 2018
Page 2

Courts tend to give a liberal interpretation to statutes which are intended to secure payment to parties furnishing labor and material for construction projects. See, for example, *U.S. for Use and Benefit of Daniel H. Hill v. American Sur. Co.*, 200 U.S. 197, 202 (1906). However, courts have refrained from attempting to create an all-inclusive definition of "labor" or "materials" under the Miller Act. See, for example, *U.S. for Use and Benefit of J.P. Byrne & Co., Inc. v. Fire Assoc. of Philadelphia*, 260 F.2d 541 (2nd Cir. 1958). Rather, one of the most important considerations when evaluating a Miller Act payment bond claim is whether the labor or materials in question actually moved the project toward completion. See, for example, *U.S. for Use and Benefit of Olson v. W.H. Cates Const. Co., Inc.*, 972 F.2d 987, 991-92 (8th Cir. 1992).

Despite the liberal interpretation courts tend to take toward the Miller Act, if the labor or materials provided by a payment bond claimant simply did not advance the construction project, the claimant is not entitled to recovery from the surety. Further still, the claimant is not entitled to recovery under the payment bond if the claimant caused the principal to incur damages. Precision's claim is respectfully denied because, based on the information that Travelers has received to date, it appears that Precision did not advance construction of the project, and likely contributed to damages incurred by Unit-ASRC in prosecuting Tester's scope of work.

We will of course be available to you to discuss the position we have taken. If you have questions, you may contact me at the phone number listed above.

Our decision is based upon the information made available to date. If you have any additional information which you believe may affect our determination, we ask that you please send this to us.

Please understand that our attention to this matter should not be construed as a waiver of any right or defense which may be available to Travelers, Liberty or Unit. Rather, all rights and defenses available to Travelers, Liberty or Unit are hereby specifically reserved.

Sincerely,

Paul Harmon
Claim Counsel

cc: Unit - ASRC Construction, LLC
Ranae Smith, Liberty Mutual (Ranae.Smith@LibertyMutual.com)

If possible, please send future communications and documents concerning this claim via email to pharmon@travelers.com
Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).